**NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, and Associated Electric & Gas Insurance Services Ltd., Plaintiffs,**

v.

**BP AMOCO P.L.C., et al., Defendants.**

**No. 03 Civ. 0200(GEL).**

United States District Court, S.D. New York.

Jan. 30, 2004.

Michael J. Carcich, Nicoletti Hornig Campise Sweeney & Paige, New York City (Robert A. Novak, on the brief), for Plaintiffs.

Heather M. Zona, Heller Ehrman White & McAuliffe LLP, New York City (Edward M. Joyce, David B. Goodwin, Esta L. Brand, on the brief), for Certain Foreign BP Defendants, Certain Non–BP Defendants, Wrongly Named Defendants, and Svenska Petroleum Exploration AS.

Esta L. Brand, Heller Ehrman White & McAuliffe LLP, San Francisco, CA (Edward M. Joyce, David B. Goodwin, Heather M. Zona, on the brief), for Defendants Vietnam Oil and Gas Corp. (Petrovietnam), Allseas USA, Inc., Allseas Subsea Contractors, S.A., and Allseas U.K., Ltd.

Edward M. Joyce, Heller Ehrman White & McAuliffe LLP, New York City (Heather M. Zona, on the brief), for Defendant Statoil Vietnam AS.

John A. Borek, Fried, Frank, Harris, Shriver & Jacobson, New York City (Elliot E. Polebaum, Daniel E. Loeb, Steven C. Parker, on the brief), for Defendants Total E & P Norge SA, Total E & P U.K. PLC, Elf Exploration U.K. PLC, and Fina Exploration Ltd.

Clifford Thau, Vinson & Elkins, LLP, New York City (Gregory Zimmer, on the brief), for Defendants Saipem S.p.A., Saipem Inc., Saipem U.K. Ltd., and European Marine Contractors Ltd.

Richard L. Lewis, Anderson Kill & Olick, P.C., New York City (John N. Ellison, on the brief), for Defendants ConocoPhillips Vietnam AS, ConocoPhillips (U.K.) Ltd., and ConocoPhillips Ltd.

## OPINION AND ORDER

LYNCH, District Judge.

Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), and Associated Electric & Gas Insurance Services Ltd. ("AEGIS") seek a declaratory judgment either finding certain insurance contracts void *ab initio*, because defendants misrepresented their eligibility for coverage, or finding claims made under them not covered. Defendants removed this action from Supreme Court, New York County, pursuant to 28 U.S.C. § 1441(a), and the Court denied plaintiffs' motion to remand. *Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*, 03 Civ. 0200, 2003 WL 1618534 (S.D.N.Y. Mar. 27, 2003) (*"Nat'l Union I"*). Defendants then moved to dismiss based on *forum non conveniens,* which the Court also denied. *Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*, No. 03 Civ. 0200, 2003 WL 21180421 (S.D.N.Y. May 20, 2003) (*"Nat'l Union II"*). Various subcategories of defendants now bring a number of motions to dismiss for lack of personal or subject matter jurisdiction pursuant to Rules 12(b)(2) and 12(b)(1), respectively, of the Federal Rules of Civil Procedure. For the reasons that follow, the motion of the self-

styled "Wrongly Named Defendants" to dismiss for lack of subject matter jurisdiction will be granted and the other motions denied.

## BACKGROUND

*Nat'l Union II* sets forth most of the relevant facts, *see* 2003 WL 21180421, at *1–3, and they will be recited here only to the extent necessary to the disposition of this motion. In 1998, BP[1] devised an "Open Cover" insurance policy for itself, its subsidiaries, affiliates, joint-venture partners, and associated entities involved in oil and gas projects worldwide. *Id.* at *1. (Carcich Aff., Ex. 2 at 2 ¶ 4.) The Open Cover allowed BP to "declare" certain projects that BP selected for coverage within a specified period of time.[2] *Id.* It covered, as "Principal Insureds," BP, its subsidiaries, affiliates, associates, and "interrelated companies of every tier," as well as, at BP's option but subject to the filing of the proper declaration, joint-venturers, project managers, and financiers. (Carcich Aff., Ex. 2 at 000116.) The Open Cover also gave BP the right to extend its coverage to contractors, architects, engineers, consultants, suppliers, agents, manufacturers, vendors, and licensors, again provided that BP named such entities in the underlying declarations at the time it made those declarations. (*Id.*) Under the Open Cover, BP declared about thirty projects worldwide. (Wrongly Named Ds. Br. 1.)

BP enlisted "Aon Risk Services ('Aon')," an insurance broker with offices in London and the United States, to identify insurers willing to participate in the Open Cover

and to coordinate project declaration and claims processing." *Nat'l Union II*, 2003 WL 21180421, at *1. BP gave Aon information about the projects BP wanted to declare, and employees of Aon then solicited insurers to participate in the Open Cover. According to plaintiffs, "Aon solicited National Union in New York, and all negotiations for the National Union policy were conducted with National Union in New York, either in person, via e-mail, telefax or over the phone with National Union's New York office"; and "National Union's underwriters executed and issued the policy in New York and delivered the policy to Aon either by hand in New York or by mail from National Union's New York office to Aon in Chicago." (Ps. Br. in Opp. to P.J. Mots. 4.) Moreover, BP's employee William Siebenaler, who bears responsibility for administering the Open Cover, met with National Union representatives in New York on at least one occasion. (Siebenaler Aff. ¶ 5.)

National Union and AEGIS, two of the fifteen insurers that comprise the international consortium that subscribed to the Open Cover (Foreign BP Ds. Br. 3), allege that certain projects declared by defendants–an assortment of BP subsidiaries, affiliates, joint-venturers, and entities unaffiliated with BP except through their alleged work on BP-affiliated oil and gas projects–do not qualify for coverage because of misrepresentations in certain declarations filed by BP. In the alternative, plaintiffs allege that certain claims, even if arising out of valid, covered projects, do not fall within the scope of the Open Cover

1. Amoco Corporation developed the insurance policy that is the subject of this action and began to seek subscribers shortly before it merged with British Petroleum Company P.L.C. to form BP Amoco P.L.C., now known as BP P.L.C. (Foreign BP Ds. Br. 3 & n. 2.) For ease of reference, the Court will refer to this parent corporation as "BP."

2. Specifically, the Open Cover allowed BP to declare projects that began after December 31, 1998, but before January 1, 2001, for onshore projects, and after December 31, 1998, but before July 1, 2000, for offshore projects. (Carcich Aff., Ex. 2 at 000117.)

policy. *Nat'l Union II*, 2003 WL 21180421, at *2.

For purposes of the present motions, defendants fall into three principal categories: (1) BP subsidiaries and affiliates ("the Foreign BP Defendants"), (2) non-BP joint-venturers or co-owners of projects declared for coverage by BP ("the Non–BP Defendants"), and (3) present and former BP entities and other business entities allegedly related to BP, but which claim no interest, either as participant or owner, in any declared project and do not claim to be insured by the Open Cover ("the Wrongly Named Defendants").[3] The former two categories of defendants move to dismiss for lack of personal jurisdiction, arguing that New York's long-arm statute does not reach them, and in the alternative, that even if it does, to exercise personal jurisdiction over them under the circumstances would violate the Due Process Clause. The latter category of defendants move to dismiss for lack of subject matter jurisdiction, arguing that, as between them and plaintiffs, no case or controversy exists.

## DISCUSSION

I. *The Motions to Dismiss for Lack of Personal Jurisdiction*

A. *Standard on a Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2)*

On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), the plaintiff bears the burden to establish jurisdiction. *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir.2003). Where no jurisdictional discovery has been conducted, allegations of jurisdictional fact must be construed in the light most favorable to the plaintiff, *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986), and the motion must be denied if those allegations suffice as a matter of law. *In re Magnetic Audiotape*, 334 F.3d at 206; *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997) ("A plaintiff facing a Fed.R.Civ.P. 12(b)(2) motion to dismiss made before any discovery need only allege facts constituting a prima facie showing of personal jurisdiction[,]" and courts must "construe the pleadings and affidavits in plaintiff's favor at this early stage."); *see also Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996).

B. *Requirements to Exercise Personal Jurisdiction*

A federal court sitting in diversity may exercise jurisdiction over a foreign defendant if, first, the defendant is amenable to process under the law of the forum state, *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *Metro. Life Ins. Co.*, 84 F.3d at 567, and second, the exercise of personal jurisdiction comports with due process under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir.1963) (*en banc*) ("[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits,

---

**3.** Defendants denominate and categorize themselves by these labels, and the Court adopts them for the sake of convenience and consistency. None of them, however, should be understood to express or imply anything substantive about the nature of the various self-identified groups of defendants, and in particular, the Court's use of the label "Wrongly Named Defendants" does not express any prejudgment of the merits of those defendants' motion; it does not, that is, imply that the Court agrees that the "Wrongly Named Defendants" have been wrongly named by plaintiffs.

with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee."); *see also Clarendon Nat'l Ins. Co. v. Lan,* 152 F.Supp.2d 506, 515 (S.D.N.Y.2001).

### C. *The Foreign BP Defendants' Motion*

■ The motion to dismiss for lack of personal jurisdiction of the Foreign BP Defendants sets forth the basic argument of which the other motions are minor variations: Because defendants did not directly negotiate, agree to, or execute the Open Cover with National Union, but only acquired an interest subsequently in certain projects or claims (allegedly) subject to its coverage, plaintiffs' causes of action do not "aris[e] from" business transactions by defendants within New York. *See* N.Y. C.P.L.R. § 302(a)(1); *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996). (Foreign BP Ds. Br. 13.) For similar reasons, defendants argue, the absence of sufficient contacts between them and the State of New York would make any assertion of personal jurisdiction over them by a New York court inconsistent with the "'traditional notions of fair play and substantial justice'" that circumscribe the constitutional limits of personal jurisdiction under the Due Process Clause. *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154, quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). (Foreign BP Ds. Br. 23–25.) Neither argument withstands analysis.

### 1. *New York's Long–Arm Jurisdiction Statute*

New York law authorizes both general and specific exercises of personal jurisdiction over foreign defendants. N.Y. C.P.L.R. §§ 301–302; *see generally Metro.*

*Life. Ins. Co.,* 84 F.3d at 567–68 (explaining distinction between general and specific jurisdiction) Plaintiffs do not argue that the Court may exercise general jurisdiction based on defendants' physical or legal presence in New York. They instead argue that specific personal jurisdiction exists under § 302(a), which authorizes New York courts to exercise jurisdiction over nondomiciliaries as to causes of action that arise from certain enumerated acts, whether performed personally or by agents. Those acts include transacting business in New York. *Id.* § 302(a)(1); *see McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981) ("Essential to the maintenance of a suit against a nondomiciliary under [§ 302(a)(1) ] is the existence of some articulable nexus between the business transacted and the cause of action sued upon.").

■ A defendant transacts business in New York within the meaning of § 302(a)(1) when it "'purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" *McKee Elec. Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *see also CutCo Indus.,* 806 F.2d at 365. To determine whether a defendant has purposefully availed itself of the privilege of conducting activities in New York, courts examine several factors, no one of which is dispositive. *Agency Rent A Car Sys.,* 98 F.3d at 29 (canvassing factors relevant to the question whether a defendant has "transact[ed] business in New York" for purposes of § 302(a)(1)). Proof of a single transaction may suffice, provided it is purposeful. *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 651, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977); *see also Kreutter v.*

*McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988) (emphasizing that N.Y. C.P.L.R. § 302 "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted").

The Foreign BP Defendants describe themselves as "independently operated, indirect subsidiaries of the named insured and ultimate parent of all BP entitles, BP p.l.c." (Foreign BP Ds. Br. 1.) They assert that their "sole connection" to New York consists in, first, acquiring an interest in one or more of the projects allegedly insured by the Open Cover, and second, joining in certain claims submitted pursuant to that policy. (*Id.* 1–2.) National Union, a New York insurer, participates in the Open Cover and therefore received defendants' declarations and claims. This suit, in brief, is an effort by National Union and AEGIS to disavow them. The question, then, is whether defendants' contacts with New York State suffice to permit the Court to exercise personal jurisdiction over them pursuant to § 302(a)(1).

Aon's acts in New York included soliciting and negotiating National Union's agreement to participate in the Open Cover; executing an insurance contract with National Union; declaring eligible projects for coverage; meeting with representatives of National Union to discuss disputed declarations; and submitting claims to National Union under the Open Cover. Without question, were Aon itself the insured, these acts would suffice to subject it to the personal jurisdiction of a New York court as to a cause of action arising out of the Open Cover. Under *Agency Rent A Car Sys.,* the Court should consider:

(i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [the defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

98 F.3d at 29 (internal citations omitted). While the Open Cover does not require, though it does (apparently) permit, the application of New York law,[4] in every other respect, Aon's negotiation, execution, and other acts in connection with the contract by which National Union subscribed to the Open Cover more than suffice under the above criteria to establish personal jurisdiction on a cause of action arising out of that contract. *See, e.g., PDK Labs,* 103 F.3d at 1109; *Clarendon Nat'l Ins. Co.,* 152 F.Supp.2d at 516–17. Indeed, the negotiation and execution of the contract in New York may alone suffice to confer personal jurisdiction over Aon in an action arising out of that contract. *See Iroquois Gas Corp. v. Collins,* 42 Misc.2d 632, 248 N.Y.S.2d 494, 497 (1964), *aff'd,* 23 A.D.2d 823, 258 N.Y.S.2d 376 (4th Dep't 1965); *see also Kreutter,* 71 N.Y.2d at 467, 527 N.Y.S.2d 195, 522 N.E.2d 40. Because plaintiffs seek, *inter alia,* rescission, declaratory relief, and reimbursement for in-

---

4. The Open Cover permits the insureds "to select 'USA' or 'English' law" (Foreign BP Ds. Br. 13), though it is not clear whether the former reference would permit each insured to elect the law of whatever U.S. jurisdiction it desires.

surance claims paid by National Union based on defendants' alleged misrepresentations (P. Br. in Opp. to P.J. Mots. 21–22), their causes of action arise out of Aon's acts such that "there is a substantial relationship between the transaction and the claim asserted." *Id.; see also CutCo,* 806 F.2d at 365; *McGowan,* 52 N.Y.2d at 272, 437 N.Y.S.2d 643, 419 N.E.2d 321.

■ Of course, Aon is not the defendant. But § 302(a) authorizes personal jurisdiction as to causes of action arising out of the enumerated acts whether performed "in person or through an agent." The dispositive question is therefore whether Aon acted as the agent of the Foreign BP Defendants in its dealings with National Union. *See Parke–Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 19, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970) ("The mere fact that the defendant was able to arrange to conduct his extensive and purposeful activity in New York without having to physically come here does not enable him to avoid the jurisdiction of our courts."). To decide whether Aon acted as the agent of these defendants requires an analysis of "the realities of the relationship in question rather than the formalities of agency law." *CutCo,* 806 F.2d at 366; *see also Kreutter,* 71 N.Y.2d at 467, 527 N.Y.S.2d 195, 522 N.E.2d 40. For purposes of personal jurisdiction, an agent is a person or entity that acts "for the benefit of, and with the knowledge and consent of, the non-resident principal," *CutCo,* 806 F.2d at 366 (internal quotation marks omitted), and over which that principal exercises "some control." *Id.; see also Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir.1981) (collecting cases).

Aon acted as the insurance broker for BP. (Siebenaler Aff. ¶¶ 6, 8.) BP acquired the Open Cover policy "for itself, certain subsidiary and/or associated companies, joint-venture partners, and other insureds as indicated in the policy wording for various potential onshore and offshore projects it expected to begin all over the world." (*Id.* ¶ 4.) The Foreign BP Defendants argue that they did no more than passively "become" insured by the Open Cover by virtue of ownership interests they acquired in projects declared by BP subsequent to the execution of the contract with National Union, and then join in the submission of certain claims under that policy. (Foreign BP Ds. Br. 1–2) None of them, they argue, knew about or consented to Aon's activities in New York, still less exercised "some control" over Aon; indeed, none of them could have controlled Aon's activities in New York, for all of them became insured by virtue of declarations filed by BP after Aon had secured the subscribers to the Open Cover, including National Union. (*Id.* 4; Foreign BP Ds. Reply Br. 1–7.)

This argument disregards a crucial fact: Each Foreign BP Defendant knew and voluntarily authorized BP to acquire insurance for it in relation to the project in which it holds some stake, whether as participant, partial owner, or both. A company cannot deputize another to take certain actions on its behalf and then disclaim knowledge or interest when those actions give rise to a legal dispute. The Foreign BP Defendants acquired ownership interests in the various projects insured by the Open Cover knowing that BP had performed the acts required to obtain insurance for those projects. They gave BP the information it needed to declare those projects for coverage. Had they wished, they could have learned the names and locations of the subscribers to the Open Cover. That they chose not to cannot immunize them from personal jurisdiction on a cause of action arising out of the very activities they delegated to BP, and through BP to Aon, to perform.

Nor does it matter that the Foreign BP Defendants did not become insured by the Open Cover until after it had been negotiated and executed by Aon. Each defendant could have decided to acquire insurance for its respective project in whatever manner it deemed suitable. Rather than handle insurance for the projects themselves, the Foreign BP Defendants entered into contracts with BP by which they effectively "bought in" to the Open Cover, including its contacts to New York and a New York insurer, thereby purposefully availing themselves of the benefits of Aon's and BP's prior dealings in New York to acquire insurance for their projects.

In short, when Aon acquired insurance for the projects by locating subscribers to the Open Cover, it acted for the benefit of, not only BP, but the Foreign BP Defendants who, after all, now claim entitlement to coverage and, in some cases, insurance proceeds pursuant to that policy. *Cf. Elman v. Belson*, 32 A.D.2d 422, 302 N.Y.S.2d 961, 964 (2d Dep't 1969) (emphasizing that while "defendant did not physically visit New York or personally enter into the negotiations," "it is hardly disputable that all of these activities were conducted for his benefit, even though he now chooses not to recognize them"). Because the Foreign BP Defendants authorized BP to take the actions required to acquire insurance for their projects--or, more accurately, consented *ex post facto* to BP's prior acts to acquire insurance for prospective projects in which defendants purchased interests--for jurisdictional purposes, Aon, BP's agent, acted for their benefit, with their consent, and with their imputed, if not actual, knowledge. *See CutCo*, 806 F.2d at 366.

While the Foreign BP Defendants object strenuously that they lacked "some control" over Aon, the objection is easily answered. Each *chose* to delegate to BP authority to acquire insurance for the projects rather than to seek it by other means, and BP controlled Aon. As a matter of law, "where there is joint control of a business enterprise–similar to that existing in a partnership or joint venture– enough control has been shown to establish *prima facie* this particular element of agency to satisfy long-arm jurisdiction." *Id.* Defendants seek to distinguish *CutCo* on the ground that they do not technically qualify as co-venturers or partners of BP. (Foreign BP Ds. Reply Br. 6–7.) But *CutCo* did not hold that the formal legal requirements of a partnership or joint-venture relationship must be established in order for the "some control" element of agency to be satisfied; it held that where arrangements among business entities are "similar to" or "sufficiently analogous to a joint venture or partnership," sufficient control exists to satisfy this element of agency for the purposes of assessing the propriety of long-arm jurisdiction under § 302(a)(1). *See id.*

The purpose of requiring "some control" is to ensure that a party will not be subjected to suit in a jurisdiction against its will, by virtue of the actions of a purported "agent" to which that party did not consent and as to which it had no choice. That purpose is clearly met here. By the time these defendants executed the transactions by which their respective projects became insured by the Open Cover, BP had already undertaken, through its own agents, to acquire insurance in, among other places, New York. Had defendants cared, had they wished not to be insured in New York such that they could be forced to litigate about the validity of their insurance coverage here, they could easily have learned of BP's arrangements, declined the invitation to avail themselves of the Open Cover, and thereby avoided that fate. They could have avoided amenability to

suit on such matters in New York by the simple expedient of asking about the insurance arrangements, and if they objected to them, seeking to negotiate the right to obtain other, more suitable coverage on their own, or if necessary, rejecting the business. Instead, defendants deliberately chose to delegate the matter of insurance for their respective projects to BP, thus taking the risk that they would find themselves uninsured (with recourse only against BP for breach of contract), as well as the lesser risk that BP would fulfill its duties in a way that subjected it and its co-insureds to suit in New York. Defendants had absolute control over whether this fate would befall them; it was their choice not to exercise that control.[5]

The Foreign BP Defendants cite *Royal & Sunalliance Insurance Co. v. Resolve Towing & Salvage, Inc.*, No. 00 Civ. 2473, 2000 WL 1801838 (S.D.N.Y. Dec. 7, 2000), in which several insurance underwriters sought to disavow liability for a claim submitted by a corporation engaged in providing towage and salvage services in the Caribbean. *Id.* at *1. The defendant had acquired insurance by enlisting Frankel & Co., a New York insurance broker, but otherwise lacked contacts with New York. *Id.* The court in *Royal* held that even if New York's long-arm statute authorized personal jurisdiction over the defendant under the circumstances, "such an assertion [would] not pass constitutional muster because the defendant's relationship with the forum does not satisfy the minimum contacts and reasonableness prongs of the due process inquiry." *Id.* at *2. By contrast, in *Security Insurance Co. v. ITA Textiles Corp.*, No. 99 Civ. 10942, 2000 WL 1576879 (S.D.N.Y. Oct. 23, 2000), which the Foreign BP Defendants disparage as an "unreported case" (Foreign BP Ds. Br. 18),[6] the court confronted a similar factual scenario but sustained jurisdiction. In *Security Insurance*, as in *Royal*, an insurer sought to disavow coverage on a claim submitted by the defendant, a Delaware corporation with its principal place of business in California. *Security Insurance*, 2000 WL 1576879, at *1. The defendant

---

**5.** This analysis also explains why it does not matter whether BP, as defendants' agent, transacted insurance business in New York on its own or through sub-agents, for however BP acted, its contacts with New York were equally discoverable by defendants and the consequent connections to New York were equally under defendants' control, to adopt and ratify or to reject. Defendants exercised their control by shrugging it off, delegating insurance concerns to BP, and adopting BP's New York-based insurance without inquiry. Any complaint now that, as a result of these decisions, they wound up transacting business in New York against their will is unavailing, for it is false. Defendants were masters of their fate in regard to insurance jurisdiction; if they chose to navigate with their eyes closed, they cannot complain that they landed in New York.

**6.** *Security Insurance* is by no means an obscure or inaccessible authority. It is reported on the Westlaw and Lexis electronic databases, which are very likely the research tools used by every law firm involved in this case, as well as by the Court. Whether a district court decision is reported in the Federal Supplement is insignificant in the modern era of computerized legal research. District judges may decide to publish or not to publish a given decision in West's bound volumes for any number of reasons, but the fact of publication in hard copy does not make a district court decision any more or less precedential or persuasive than one that is only published electronically. Neither *Royal* nor *Security Insurance* binds the Court, and to the extent these decisions conflict, the Court must decide for itself which represents the more persuasive view. This Court sees no reason to encourage district judges to kill trees in order to ensure that their opinions will be taken seriously by other judges. It would surely be arbitrary to defer more to the personal-jurisdiction reasoning in *Royal* because someone decided to publish that decision in the *American Maritime Cases* series.

had acquired insurance by contacting an insurance broker in New York, who in turn contacted a "a marine underwriter for [the] underwriting manager for [the plaintiff] Security." *Id.* The court found that this string of agency relationships sufficed to authorize personal jurisdiction over the defendant ITA on a cause of action arising out of the insurance policy, because the defendant ITA "purposefully engaged the services of Simon," the insurance broker, "asking him to locate an insurance policy," and Simon negotiated the policy on ITA's behalf. *Id.* at *3.

Here, of course, Aon did not act directly on behalf of the Foreign BP Defendants; it acted for BP, which in turn acted on behalf of various BP subsidiaries and others that it projected would acquire interests in nascent oil and gas projects worldwide. That additional link, however, does not modify the analysis: If $X$ transacts business in New York, then $X$ will be subject to personal jurisdiction on a cause of action arising out of that transaction. If $X$ instead hires $Y$ to transact the same business in New York, and $Y$'s contacts with New York relative to that transaction would suffice to confer on a New York court personal jurisdiction over $Y$, then $X$ will also be subject to personal jurisdiction on a cause of action arising out of that transaction. *See CutCo*, 806 F.2d at 366. If $X$ decides that rather than *either* transact the same business itself *or* hire an agent to do so, it would prefer not to be bothered, and for that reason delegates authority to $Y$ to transact the same business; and $Y$, in turn, exercises that authority by hiring $Z$ as its agent; and $Z$'s contacts with New York would suffice to give rise to specific long-arm jurisdiction over $Z$; then, again, $X$ will be subject to jurisdiction on a cause of action arising out of $Z$'s, the agent's, transaction.

That is the situation here. Rather than independently secure insurance for various oil and gas projects in which they acquired interests, the Foreign BP Defendants decided, for whatever reason, to have BP take care of that particular transaction and therefore submitted the information necessary for BP to declare their projects under the Open Cover.[7] BP enlisted Aon as its agent to acquire insurance for these projects under the Open Cover, which was developed precisely to permit BP's subsidiaries and business partners to accept insurance coverage in relation to those projects. And Aon's New York contacts would suffice to permit a New York court to exercise personal jurisdiction over Aon on a cause of action arising out of its dealings with National Union. Neither the number of intermediate agency relationships nor defendants' protestations that they lacked actual knowledge or control over Aon can obscure the simple fact that, at bottom, these defendants transacted certain business essential to their activities—the negotiation, execution, and subsequent administration of a major insurance contract—in New York, and this action arises out of that transaction. That defendants made use of others to carry out this business on their behalf does not deprive New York of jurisdiction to resolve disputes that arise directly out of that New York transaction.

To the extent *Royal* implies that New York's long-arm statute does not reach the

---

7. This is not a case, like *Louis Marx & Co. v. Fuji Seiko Co.*, 453 F.Supp. 385 (S.D.N.Y. 1978), upon which defendants rely, in which the activities of the relevant agents—here BP and Aon—simply inured to the benefit of defendants without their conscious choice to receive that benefit. *See id.* at 390–91. By their decision to acquire insurance for their projects through the Open Cover rather than to seek it independently, the Foreign BP Defendants purposefully availed themselves of BP's and Aon's acts in New York.

Foreign BP Defendants, the Court respectfully disagrees. Plaintiffs correctly note, however, that the *Royal* court declined to sustain jurisdiction on constitutional grounds, *see* 2000 WL 1801838, at *2, and its implications, if any, for the reach of N.Y. C.P.L.R. § 302(a)(1) are unclear. The Foreign BP Defendants also cite *Ambassador Insurance Co. v. Truly Nolan of America, Inc.*, 514 F.Supp. 985 (S.D.N.Y.1981), where the court found that a single act by an insurance agent in New York did not suffice to subject the principal to personal jurisdiction. *Id.* at 988–89. (Foreign BP Ds. Br. 17.) Here, by contrast, Aon played a continuing role in negotiating the Open Cover with National Union, submitting declarations from BP based on information supplied by defendants, and making claims on their behalf. And in any event, to the extent *Ambassador Insurance Co.* suggests that a single purposeful act does not suffice to confer on a New York court personal jurisdiction

over an out-of-state defendant, that proposition must be rejected as inconsistent with the holding of the New York Court of Appeals in *Kreutter*, 71 N.Y.2d at 467, 527 N.Y.S.2d 195, 522 N.E.2d 40.[8]

### 2. Constitutional Requirements

■ The Foreign BP Defendants also argue that even if New York law authorizes personal jurisdiction over them, the exercise of that jurisdiction would contravene the "traditional notions of fair play and substantial justice" imposed by the Due Process Clause, *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (internal quotation marks omitted), which "protects a person without meaningful ties to the forum state from being subjected to its jurisdiction." *Metro. Life Ins. Co.*, 84 F.3d at 567. A foreign defendant may be subjected to the personal jurisdiction of a forum state's courts if that defendant " 'purposefully avail[ed] it-

---

8. The Foreign BP Defendants cite several other decisions in support of their position. Some of these decisions address personal jurisdiction under § 302(a)(1) in connection with motions to transfer venue. *See Seneca Ins. Co. v. Henrietta Oil Co.*, No. 02 Civ. 3535, 2003 WL 255317 (S.D.N.Y. Feb. 4, 2003); *Am. Motorists Ins. Co. v. Roller Bearing Co.*, No. 99 Civ. 9133, 2001 WL 170658 (S.D.N.Y. Feb. 21, 2001). *Seneca* does not discuss § 302(a)(1), and the circumstances in that case strongly favored litigation in Texas despite the existence of a New York forum-selection clause, which the court held unenforceable. *See* 2003 WL 255317, at *3–4. In *American Motorists*, the court declined to find personal jurisdiction under the totality of the circumstances, where three of the four claims sued upon arose out of contracts negotiated and executed outside New York. *See* 2001 WL 170658, at *4. In *State Street Bank and Trust Co. v. Arganese*, No. 95 Civ. 0440, 1996 WL 97186 (S.D.N.Y. Mar. 5, 1996), the court said that "activities of an agent that take place in New York by mere fortuity, and without the knowledge of the principal, do not subject the principal to New York's long-arm jurisdiction," *id.* at *2, and on that basis disclaimed personal jurisdiction over defendants on a cause of action arising out of indenture and deferred purchase certificates executed by defendants' agents in New York. The Court respectfully disagrees with *State Street Bank* insofar as it suggests that a principal may avoid the jurisdiction of New York courts by professing ignorance that its agent transacted the very business assigned to that agent in New York. But Aon's acts in New York can hardly be described as fortuitous; it purposefully solicited National Union's participation in the Open Cover. In *National Union Fire Insurance Co. v. Mason, Perrin & Kanovsky*, 689 F.Supp. 303 (S.D.N.Y.1988), the court held that plaintiff's cause of action did not arise out of defendants' alleged misrepresentations in an insurance contract because "all the events relating to the application for and the execution of the policy took place in Washington, D.C." *Id.* at 307. Here, the misrepresentations allegedly made by BP (through Aon) took place in New York; Aon negotiated and executed the Open Cover on behalf of BP in New York; and Aon submitted claims made by the defendants to, among other insurers, National Union in New York.

self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Because the "purposeful availment" requirement of N.Y. C.P.L.R. § 302(a)(1) derives directly from *Hanson, see McKee Elec. Co.*, 20 N.Y.2d at 382, 283 N.Y.S.2d 34, 229 N.E.2d 604, "satisfaction of the section 302(a)(1) criteria will generally meet federal due-process requirements." *Kelly v. MD Buyline, Inc.*, 2 F.Supp.2d 420, 431 (S.D.N.Y.1998). A defendant that purposefully directs acts toward New York can and should "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The Foreign BP Defendants nonetheless maintain that it would be unfair for a New York court to exercise personal jurisdiction over them because they allegedly could not foresee a New York forum, did not perform purposeful acts in New York, and could not anticipate that by merely purchasing interests in the projects covered by BP's Open Cover policy, they would be haled into court here. (Foreign BP Ds. Br. 24.) They liken their situation to that of petitioner in *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), a Japanese company that sold products to a Taiwanese manufacturer of tire tubes, one of which was used in the construction of the allegedly defective motorcycle that caused the California plaintiff's injuries. *Id.* at 106, 107 S.Ct. 1026. (Foreign BP Ds. Reply Br. 11–12.) The Supreme Court held that petitioner's act of placing its "product into the stream of commerce, without more, [wa]s not an act of the [petitioner] purposefully directed toward the forum State," because petitioner's mere "awareness that the stream of commerce may or will sweep the product into the forum State" could not be deemed purposeful. *Id.* at 112, 107 S.Ct. 1026.

Here, the Foreign BP Defendants purchased interests in various oil and gas projects for which they knew or should have known that BP had acquired insurance and intended to "declare" their projects pursuant to the Open Cover. *See Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 613 n. 4 (8th Cir.1994) (observing that in applying the criteria of *International Shoe*, "it is a matter of common sense that there should be no distinction between 'know' and 'should have known' "). Again, had they wished, defendants could have discovered the identity and locations of the insurers participating in the Open Cover. It is neither unfair nor unreasonable to expect them to defend an action based on business transactions taken by Aon in New York in order to secure an insurance contract expressly intended to covers their projects.[9] After

---

**9.** That the Foreign BP Defendants acquired interests in various covered projects after the conclusion of the Open Cover does not absolve them of responsibility for the New York acts taken by Aon and BP in order to secure coverage for those projects. Not only did defendants submit information to BP to enable it, through Aon, to declare their projects to National Union for coverage pursuant to the Open Cover and subsequently, in some cases, to submit claims; by effectively buying into the Open Cover, they also, as principals, ratified Aon's prior acts as agent on their behalf. *Cf. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 60 (1st Cir.2002). Indeed, while in some circumstances subjecting defendants to jurisdiction based on the unknown, perhaps unforeseeable, and fortuitous *subsequent* actions of agents might be deemed unreasonable under the Due Process Clause, where, as here, the agents already have performed the actions in

all, the Foreign BP Defendants continue to claim to be insured by the Open Cover. They do not contend, for example, that Aon acted *ultra vires* its authority or that, for any other reason, Aon's New York acts do not suffice to bind them under the Open Cover, such that they now claim no rights against National Union. To the contrary, because of Aon's New York acts, by which it secured National Union's subscription to the Open Cover and declared various BP-affiliated projects under that policy, the Foreign BP Defendants claim entitlement to insurance coverage and, in some cases, to payments from National Union. It is simply untenable for these defendants simultaneously to insist that for National Union to pursue its claim that the Open Cover does not extend to certain of their projects or claims because of misrepresentations by their agents, it should be required to sue each of them, individually, in fora scattered throughout the globe.

Finally, analysis of the factors enumerated by the Supreme Court in *Asahi* confirms that the exercise of personal jurisdiction over the Foreign BP Defendants is both fair and reasonable under the Due Process Clause:

> The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining the most efficient resolution of the controversy; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interests of the states in furthering substantive social policies.

*Metro. Life. Ins. Co.*, 84 F.3d at 568 (citing *Asahi*, 480 U.S. at 113–14, 107 S.Ct. 1026). These factors decisively establish the fairness and reasonableness of exercising personal jurisdiction over these defendants.

Defendants will not be unduly burdened by this litigation. Plaintiffs allege certain common misrepresentations by BP, which can ably defend this action on behalf of all defendants. As a practical matter, BP has a strong incentive to litigate this case vigorously, not only because of its own interests in the projects at issue, but because of its contractual responsibility to the other defendants if it failed, by reason of its own wrongful or negligent acts, to secure insurance for the projects. Indeed, if plaintiffs succeed in this action, the other defendants may well have recourse against BP, presumably in fora of their own choosing. Despite defendants' diverse nationalities, this case will not require the production of witnesses and evidence located worldwide. Except for defendants' provision of the information needed for BP to declare their various projects pursuant to the Open Cover, most of the relevant negotiations and other conduct took place in the United States or Great Britain. By contrast, the burden on plaintiffs, were they required to bring separate actions against each defendant in fora throughout the world, would be colossal. Both plaintiffs' and the judicial system's interests in obtaining an efficient resolution of these claims in a single, consolidated action are therefore overwhelming. Finally, New York State has an undoubted interest in regulating an insurance contract negotiated, executed, and administered in New York by a New York company.

In short, for jurisdictional purposes, Aon's and BP's actions in New York to

---

question, defendants enjoy the opportunity to discover precisely what those agents did and where they did it, thus enabling them to make a fully informed decision about whether to ratify those agents' acts.

negotiate and execute an insurance contract with National Union, to declare projects eligible for coverage, and to submit claims on behalf of, and as agent for, the Foreign BP Defendants more than suffice to constitute transacting business in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1), this action arises out of that transaction; and the Court's exercise of personal jurisdiction under the circumstances fully comports with those "traditional notions of fair play and substantial justice" that circumscribe the exercise of personal jurisdiction under the Due Process Clause. *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (internal quotation marks omitted). Put simply, notwithstanding the number and diversity of defendants, this is in essence a unified action to address the validity and interpretation of a single insurance program negotiated, executed, and administered in New York, through the deliberate choice of agents to whom defendants not only delegated the responsibility to secure insurance, but whose decision to carry out that responsibility in New York was easily discoverable by defendants at the time they acquired their respective interests in the covered projects. Requiring defendants to litigate this action in New York can therefore hardly be deemed unfair. Accordingly, the motion to dismiss for lack of personal jurisdiction of the Foreign BP Defendants is denied.

## D. *The Non–BP Defendants' Motion*

The Non–BP Defendants bring a separate motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(2). For purposes of person-

al jurisdiction, the sole difference between their status and that of the Foreign BP Defendants is that the former are not BP subsidiaries. The Non–BP Defendants describe themselves as unaffiliated foreign corporations that have ownership interests in projects declared for coverage under the Open Cover.[10] But nothing about the preceding analysis of the Foreign BP Defendants' motion turns on their status as BP subsidiaries. The dispositive question under N.Y. C.P.L.R. § 302(a)(1), as under the Due Process Clause, is whether defendants took certain acts, whether personally or through agents, which were purposefully directed toward New York. The Non–BP Defendants, no less than the Foreign BP Defendants, understood that BP had acquired insurance to cover their respective projects. (Non–BP Ds. Br. 2) The gravamen of their objection to personal jurisdiction is that they did not know that BP had acquired that insurance by acts within, among other places, New York. But these defendants, too, had they desired, could have arranged to insure their projects by other means. They instead chose to entrust this task to BP. Had they troubled to inquire, the Non–BP Defendants could have discovered the identities and locations of the insurers for their projects. That they did not cannot immunize them from personal jurisdiction based on acts taken by their agents in New York and out of which plaintiffs' causes of action arise. The Non–BP Defendants' motion is therefore denied for substantially the same rea-

10. The sole exception is Stolt Offshore Ltd., a contractor for one of the Foreign BP Defendants, BP Exploration Operating Co., on a project subject to the Open Cover. The contract between Stolt and that BP subsidiary obliged the subsidiary to acquire insurance for Stolt, which the subsidiary did by availing itself of the Open Cover. (P. Br. in Opp. to P.J. Mots. 6; Carcich Aff., Exs. 8–9.) Stolt's sta-

tus as an insured contractor on one of the covered BP projects rather than an insured co-owner or co-venturer with BP does not make Stolt's decision to buy into the Open Cover, and thereby avail itself of BP's actions in New York, any less purposeful for purposes of N.Y. C.P.L.R. § 302(a)(1) and the Due Process Clause.

sons set forth above in section I(C) of this Opinion.[11]

### E. The Remaining 12(b)(2) Motions

### 1. ConocoPhillips, Svenska, and the Total Foreign Defendants

ConocoPhillips Vietnam AS, ConocoPhillips (U.K.) Ltd., and ConocoPhillips Ltd. (collectively, "the ConocoPhillips Defendants") join in the motions of the Foreign BP and Non–BP Defendants, as does Svenska Petroleum Exploration AS. For purposes of jurisdiction, these defendants do not differ in any relevant respect from the Non–BP Defendants. Each purchased an ownership interest in or participates as a co-venturer on BP-affiliated oil and gas projects insured by the Open Cover, and National Union brings this action to obtain a declaratory judgment finding such projects not insured by the Open Cover. Total E & P Norge SA, Total E & P U.K. PLC, Elf Exploration U.K. PLC, and Fina Exploration Ltd. (collectively, "the Total Foreign Defendants") bring a separate motion to dismiss for lack of personal jurisdiction. They describe themselves as "passive partners or co-venturers with BP Amoco on·one or more of the exploration projects which BP Amoco declared covered under the [Open Cover]," and they, too, concede that they were "offered and accepted the opportunity by BP Amoco affiliates to insure their interests in a given project under BP Amoco's Open Cover Policy." (Total Foreign Ds. Br. 3.) Again,

for purposes of personal jurisdiction, the Total Foreign Defendants do not differ in any relevant respect from the Non–BP Defendants. By availing themselves of the opportunity to insure themselves by means of the Open Cover, they availed themselves of BP's actions, both its own and those of its agent Aon, within New York. Accordingly, the motions of the ConocoPhillips Defendants, Svenska Petroleum Exploration AS, and the Total Foreign Defendants are denied for the reasons already stated.

### 2. The Saipem Defendants

Saipem S.p.A., Saipem Inc., Saipem U.K. Ltd., and European Marine Contractors Ltd. (collectively, "the Saipem Defendants") also move to dismiss pursuant to Fed.R.Civ.P. 12(b)(2).[12] Saipem S.p.A. and Saipem U.K. Ltd. argue that they lack any connection to the Open Cover, that they neither "entered into any contractual relationship [n]or performed any work in connection with the projects identified in the Amended Complaint." (Saipem Ds. Reply Br. 3, 6–7.) Plaintiffs allege, on information and belief, that Saipem S.p.A. and Saipem U.K. Ltd. acted as contractors on projects declared by BP under the Open Cover. (P. Br. in Opp. to P.J. Mots., Ex. D at 2.) Absent jurisdictional discovery, the Court must credit plaintiffs' jurisdictional allegations and "construe the pleadings and affidavits in [their] favor." *PDK*

---

**11.** Non–BP Defendant ONGC Videsh also moves to dismiss for lack of proper service of process, *see* Fed.R.Civ.P. 12(b)(5), because plaintiffs initially failed to serve ONGC Videsh in the manner prescribed by Indian law. *See* Fed.R.Civ.P. 4(f)(2)(a). (Non–BP Ds. Br. 14.) Plaintiffs requested in their opposition papers, however, that they be permitted to cure this alleged defect in service by re-serving ONGC Videsh within sixty days (Carcich Aff. ¶ 4.), which they have done. (Carcich Supp. Aff. ¶ 5, Ex. 1.) Plaintiffs' request is granted, and

proper service having now been effected, ONGC Videsh's Rule 12(b)(5) motion is denied.

**12.** Even though the same law firm represents all four of these defendants, and their arguments are virtually identical, Saipem U.K. and European Marine Contractors filed one motion to dismiss, while Saipem S.p.A. and Saipem Inc. filed a separate motion to dismiss. The Court will consider them together.

*Labs, Inc.*, 103 F.3d at 1108. This does not, of course, preclude Saipem S.p.A. and Saipem U.K. Ltd. from challenging personal jurisdiction at a later stage. The other two Saipem Defendants, Saipem Inc. and European Marine Contractors Ltd., concede that they "acted as contractors on two of the projects" identified in the Amended Complaint. (Saipem Ds. Reply Br. 1.) At least for purposes of this motion, the Court must assume that the Saipem Defendants fall within the category of "contractor[s] for whom BP was required to obtain insurance pursuant to the terms of the relevant contract." (Ps. Br. in Opp. to P.J. Mots. 6–7.)

Status as a contractor on a project covered by the Open Cover, as opposed to a co-owner or joint-venturer on such a project, does not modify the personal jurisdiction analysis. Assuming, as plaintiffs allege, that these defendant contractors entered into contracts with BP subsidiaries or co-venturers requiring BP to obtain the necessary insurance for the projects on which they agreed to work, the contractors purposefully availed themselves of BP's and Aon's activities to negotiate and execute an insurance contract with National Union in New York and subsequently to declare their projects pursuant to the Open Cover. BP's and Aon's activities suffice to subject them, and those for whom they acted as agents, to the personal jurisdiction of a New York court on a cause of action that arises out of those activities.

The Saipem Defendants, like the Foreign BP and Non–BP Defendants, object that they lacked knowledge or control over BP or Aon. (Saipem Ds. Reply Br. 7–8.) Again, this objection misconceives the issue and the nature of their nexus to New York. By choosing to be contractors on projects that they knew or should have known were insured by the Open Cover,

the Saipem Defendants purposefully availed themselves of BP's and Aon's New York activities, effectively ratifying those activities after the fact. They cannot now object that they did not know about or consent to those activities. Had they wished, they could have inquired into the identities and locations of the Open Cover insurers. Had they, upon learning of National Union's identity and location, wished to avoid being haled into a New York court on a cause of action arising out of the Open Cover, they could have sought insurance elsewhere. And were their refusal to consent to be insured by the Open Cover a deal-breaker for the owners or managers of their respective projects, they could have declined the work. The Saipem Defendants' motions are therefore also denied.

### 3. *Petrovietnam and the Allseas Defendants*

■ Vietnam Oil and Gas Corporation (Petrovietnam), Allseas USA, Inc., Allseas Subsea Contractors, S.A., and Allseas UK, Ltd. join in the Non–BP Defendants' motion to dismiss. The three Allseas entities describe themselves as contractors on projects subject to the Open Cover, and for purposes of personal jurisdiction, their status does not differ in any relevant respect from that of the Non–BP Defendants or the Saipem Defendants discussed in the preceding section. (*See* Petrovietnam, *et al.* Notice of Mot., Exs., 2–4.) Accordingly, as to the Allseas entities, the motion to dismiss is denied for the reasons already stated.

Petrovietnam, a corporation wholly owned by the Socialist Republic of Vietnam (*id.*, Ex. 1 ¶ 2), moves to dismiss on the additional ground that it qualifies as a foreign sovereign within the meaning of the Foreign Sovereign Immunities Act

("FSIA"), 28 U.S.C. § 1602, *et seq.*,[13] which confers immunity on foreign states, subject to enumerated exceptions. A "foreign state" includes an "agency or instrumentality of a foreign state . . . a majority of whose share or other ownership interest is owned by a foreign state." *Id.* § 1603(b)(2). Petrovietnam qualifies as a foreign state under this definition, as plaintiffs concede (P. Supp. Br. in Opp. to Petrovietnam Mot. 4), and it therefore enjoys immunity from suit unless one of the Act's exceptions apply. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 138–39 (2d Cir.2001).

Plaintiffs argue that the commercial activity exception, 28 U.S.C. § 1605(a)(2), applies because their cause of action against Petrovietnam, as against the other defendants, arises out of "a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." *Id.* The Court agrees. The same activities that permit the Court to exercise personal jurisdiction over Petrovietnam under N.Y. C.P.L.R. § 302(a)(1)– the negotiation of National Union's participation in the Open Cover, execution of an insurance contract, and submission of declarations under that policy–constitute a commercial transaction within the United States. Alternatively, those activities at a minimum constitute acts in the United States in connection with the underlying commercial oil-project activities that Petrovietnam and BP engaged in "elsewhere." Petrovietnam, through BP and

Aon, acquired insurance for two projects in which it maintains ownership interests. Had its corporate officers traveled to New York personally to secure National Union's participation in the insurance policy covering its projects, Petrovietnam would clearly have performed a commercial activity within the meaning of § 1605(a)(2), and it would be subject to suit on a cause of action arising out of that activity. *See Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 747 (2d Cir.2000) (commercial activity exception requires "significant nexus" between alleged commercial act or acts and plaintiff's cause of action). That Petrovietnam instead deputized BP to acquire the necessary insurance for its projects does not modify the analysis. At bottom, BP and Aon acted on behalf of, among others, Petrovietnam in securing National Union's subscription to the Open Cover, which insures, among other projects, those in which Petrovietnam maintains an ownership interest. The FSIA therefore authorizes the exercise of jurisdiction over Petrovietnam as to causes of action that arise out of the Open Cover. Accordingly, Petrovietnam's motion to dismiss based on its alleged sovereign immunity is denied.

### 4. *Aker Stord AS*

On October 24, 2003, Aker Stord AS, a Norwegian company that entered into a contract with a BP subsidiary whereby that subsidiary arranged for Aker Stord to be insured by the Open Cover, moved to dismiss for lack of personal jurisdiction. (Aker Stord Br. 1.) Aker Stord's brief

---

**13.** Petrovietnam admits that it bought interests in two projects insured by the Open Cover pursuant to declarations filed by BP. (Petrovietnam, *et al.* Notice of Mot., Ex. 1 ¶¶ 4–5.) Like the Foreign BP and Non–BP Defendants, it objects that it had only a general awareness that the project operators "arranged the insurance programs for those pro-

jects," but "did not know the details of the insurance, such as the names and locations of the insurance companies." (*Id.* ¶ 6.) The Court has already rejected that argument, and the basis for specific jurisdiction explained in sections 1(C) and (D) of this Opinion applies equally to Petrovietnam.

repeats all the arguments made by the Foreign BP and Non–BP Defendants, and the Court rejects them again for the reasons already stated. Aker Stord, too, availed itself of BP's and Aon's activities in New York to secure National Union's subscription to the Open Cover, to execute an insurance contract, and to declare projects pursuant to the Open Cover. BP and Aon acted as the agent of Aker Stord in connection with the Open Cover, and Aker Stord is therefore subject to personal jurisdiction on causes of action that arise out of the Open Cover. Aker Stord's motion is accordingly denied.

## II. The Motions to Dismiss for Lack of Subject Matter Jurisdiction

### A. Standard on a Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1)

On a motion to dismiss for lack of subject matter jurisdiction, the defendant "may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both," and how the Court should "resolve the motion to dismiss depends upon whether the motion presents a factual challenge." *Robinson*, 269 F.3d at 140 (citations and internal quotation marks omitted). Where "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Id.* (citations and internal quotation marks omitted). But where, as here, the defendant challenges jurisdictional facts, "the court may inquire by affidavits or other-

wise, into the facts as they exist." *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *see also Robinson*, 269 F.3d at 140; *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1010–11 (2d Cir.1986); *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976).

### B. The Wrongly Named Defendants' Motion

The Wrongly Named Defendants move to dismiss for lack of subject matter jurisdiction, arguing that, as between them and plaintiffs, no case or controversy within the meaning of Article III, § 2 of the Constitution exists. By contrast to the Foreign BP and Non–BP Defendants, these defendants assert that they "have no ownership interests in any projects [insured by the Open Cover] and are not making claims to recover insurance proceeds for property damage at those projects." (Wrongly Named Ds. Br. 1.) Specifically,

> None of these defendants: (a) claims or has a present interest as an owner, partner, contractor, subcontractor or otherwise in any of the 30 projects "declared" under the Open Cover; (b) presently claims to be an insured under the Open Cover or any declaration under the policy; or (c) is presently making a claim for payment or indemnity under the Open Cover or any declaration under the policy.

(*Id.* 2.)[14]

Because the Wrongly Named Defendants agree with plaintiffs that the Open

14. By order dated December 15, 2003, the Court denied plaintiffs' motions to strike various portions of the Affidavits of William Siebenaler. Plaintiffs object that Siebenaler cannot competently testify that the Wrongly Named Defendants have no present interest in any of the projects insured by the Open Cover because he does not work for them. (Ps. Br. in Opp. to S.M.J. Mot. 12.) Siebenaler bears principal responsibility for administering the Open Cover on behalf of BP, submits information to Aon to permit it to "declare" projects, and therefore would know which companies falls within the Open

Cover does not insure them, it seems clear that no case or controversy exists for the Court to adjudicate. (*Id.* 4–5.) *See S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch., Inc.,* 24 F.3d 427, 431 (2d Cir.1994) ("Article III of the United States Constitution limits the judicial authority of the federal courts to 'Cases' and 'Controversies.' U.S. Const. art. III, § 2. Because Article III is a limit on judicial power, a court will not have subject matter jurisdiction over an action absent the requisite case or controversy."). Plaintiffs argue, however, that the Wrongly Named Defendants disclaim only a *present* interest in the Open Cover, which "is far different from having no interest" (P. Br. in Opp. to S.M.J. Mot. 7), and they cite cases for the proposition that the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.,* permits courts in some circumstances to adjudicate controversies based on future contingencies. *E.g., Assoc. Indem. Corp. v. Fairchild Indus., Inc.,* 961 F.2d 32, 35 (2d Cir.1992); *Am. Mach. & Metals, Inc. v. De Bothezat Impeller Co.,* 166 F.2d 535, 536 (2d Cir.1948); *accord, Nat'l R.R. Passenger Corp. v. Consol. Rail Corp.,* 670 F.Supp. 424, 429–30 (D.D.C.1987). This general principle, however, simply begs the question whether the facts here present such circumstances, because " '[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree.... Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *see also* Charles Alan Wright, *et al., Federal Practice & Procedure* § 2757, at 477 (3d ed. 1998) ("[T]he practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists."); *Nat'l R.R. Passenger Corp.,* 670 F.Supp. at 430 (same; collecting cases).

Here, the future contingency at issue is that the Wrongly Named Defendants might some day acquire interests in projects insured by the Open Cover. But that future contingency could apply to virtually any business entity. Countless companies might one day purchase an ownership interest in or agree to perform work on one of the oil and gas projects insured by the Open Cover. Except for the superficial fact that some Wrongly Named Defendants appear nominally related to BP, no evidence suggests that any of these entities are any more likely than any other to purchase an interest in or become a contractor on a project allegedly insured by the Open Cover. The mere possibility that one of these defendants might acquire an interest in a project insured by the Open Cover in the future does not suffice to give rise to an actual case or controversy. *Cf. Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.,* 68 F.3d 409, 414–15 (11th Cir. 1995) (no justiciable case or controversy where plaintiff insured filed a declaratory judgment action based on the fact that "defendant insurers denied coverage to similar utilities under similar circumstances in the past").

---

Cover's scope. (Siebenaler Supp. Aff. 2–3.) To require each of the more than seventy Wrongly Named Defendants to submit an affidavit stating that it does not claim to be insured by the Open Cover would be superfluous. Plaintiffs have not submitted any evidence to call into question Siebenaler's basis of knowledge.

■ Plaintiffs place principal, but misplaced, reliance on *Hanover Ins. Co. v. Dialuck Corp.*, No. 01 Civ. 7484, 2002 WL 1453834 (S.D.N.Y.2002). While the Court has no quarrel with the general principle that "litigation over insurance coverage has become the paradigm for asserting jurisdiction [in declaratory judgment actions] despite future contingencies that will determine whether a controversy ever actually becomes real," *id.* at *2 (internal quotation marks omitted), the *Hanover* court applied that principle to sustain subject matter jurisdiction in circumstances far different from those presented by this case. In *Hanover*, plaintiffs sought a declaratory judgment as to an actual controversy, and the court rejected defendants' argument that "any action taken by the court would likely be rendered moot by the reinstatement" of certain involuntary bankruptcy petitions, which would stay the underlying action. *Id.* Here, plaintiffs urge the Court to sustain jurisdiction in the opposite scenario: No actual controversy exists, and plaintiffs argue only that defendants *might* one day acquire an interest in the Open Cover that *could* create a controversy. The Court lacks subject matter jurisdiction to decide "what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The Wrongly Named Defendants' motion to dismiss for lack of subject matter jurisdiction is therefore granted.

### C. *The Remaining 12(b)(1) Motions*

#### 1. *ConocoPhillips Ltd. and ConocoPhillips (U.K.) Ltd.*

■ ConocoPhillips Ltd. and ConocoPhillips (U.K.) Ltd. seek to join in the Wrongly Named Defendants motion. As plaintiffs correctly observe, however, the Conoco defendants, unlike the other Wrongly Named Defendants, *presently* claim an interest in the Open Cover policy. (Ps. Br. in Opp. to S.M.J. Mot. 4–5); they concede that they participate in a project insured by the Open Cover. (ConocoPhillips Ltd. and ConocoPhillips (U.K.) Ltd. Reply Br. 2.) That makes all the difference, for it means that a present, actual controversy exists: The Conoco defendants insist that the Open Cover insures them because of their participation on a project declared pursuant to it; plaintiffs deny that. The Court can constitutionally determine whether, as plaintiffs claim, this project, like those in which the Foreign BP and Non–BP Defendants hold interests, does not fall within the ambit of the Open Cover because of alleged misrepresentations made to plaintiffs. *See Morris v. Progressive Cas. Ins. Co.*, 662 F.Supp. 1489, 1491 (S.D.N.Y.1987) ("Disputes over coverage afforded by an insurance policy present an actual case or controversy, so that declaratory judgment is appropriate."), citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *cf. Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F.Supp.2d 293, 295–96 (S.D.N.Y.2003) (sustaining jurisdiction over insured's causes of action seeking declaratory relief while dismissing related insurance claims for breach of contract on ripeness grounds). The motion to dismiss for lack of subject matter jurisdiction of ConocoPhillips Ltd. and ConocoPhillips (U.K.) Ltd. is therefore denied.

#### 2. *Statoil Vietnam AS*

Statoil Vietnam AS likewise seeks to join in the Wrongly Named Defendants motion to dismiss, but on an entirely distinct basis: that it has been acquired by another entity and changed its name. Statoil Vietnam AS, a former subsidiary of Statoil ASA, once "held a 16.33% interest in the Nam Con Son Pipeline project in

Vietnam," one of the projects declared pursuant to the Open Cover, but it has since sold its assets to a company now known as ConocoPhillips Vietnam AS. (Statoil Vietnam AS Notice of Joinder, Ex. 1 ¶ 2.) Plaintiffs do not dispute this. (Ps. Opp. to Statoil Vietnam AS Mot. 4) ConocoPhillips Vietnam AS, not Statoil Vietnam AS, now owns the relevant interest in the pipeline project insured by the Open Cover, and in section I(E)(1) of this Opinion, the Court denied ConocoPhillips Vietnam AS's motion to dismiss for lack of personal jurisdiction. This ostensible motion to dismiss for lack of subject matter jurisdiction thus amounts to no more than a dispute over the proper name under which this particular entity should be sued. ConocoPhillips Vietnam AS remains a party to this action, and plaintiffs do not seek relief from Statoil Vietnam AS but rather from its successor-in-interest, that is, ConocoPhillips Vietnam AS. Accordingly, the Court will deem ConocoPhillips Vietnam AS substituted for Statoil Vietnam AS, and the latter's motion to dismiss for lack of subject matter jurisdiction is denied as moot.

## CONCLUSION

For the reasons set forth above, the motions to dismiss for lack of personal jurisdiction of (1) Certain Foreign BP Defendants, (2) Certain Non–BP Defendants, (3) ConocoPhillips Vietnam AS, ConocoPhillips (U.K.) Ltd., and ConocoPhillips Ltd., (4) Svenska Petroleum Exploration AS, (5) Total E & P Norge SA, Total E & P U.K. PLC, Elf Exploration U.K. PLC, and Fina Exploration Ltd., (6) Saipem U.K. Ltd. and European Marine Contractors, (7) Saipem S.p.A. and Saipem Inc., (8) Vietnam Oil and Gas Corporation (Petrovietnam), Allseas USA, Inc., Allseas UK Ltd., and Allseas Subsea Contractors, S.A., and (9) Aker Stord AS are denied. The motion to dismiss for lack of subject mat-

ter jurisdiction of the Wrongly Named Defendants is granted. The motion to dismiss for lack of subject matter jurisdiction of ConocoPhillips Ltd. and ConocoPhillips (U.K.) Ltd. is denied, and the motion to dismiss for lack of subject matter jurisdiction of Statoil Vietnam AS is denied as moot.

SO ORDERED.