William J. MANNING, Manning
& Napier Advisors, Inc.,
Plaintiffs–Appellants,

v.

ENERGY CONVERSION DEVICES,
INC., Stanford R. Ovshinsky,
Defendants–Appellees.

No. 860, Docket 93–7868.

United States Court of Appeals,
Second Circuit.

Argued Nov. 8, 1993.

Decided Jan. 10, 1994.

Roger L. Waldman, New York City (Moses & Singer, New York City, of counsel), for plaintiffs-appellants.

Steven Tomashefsky, Chicago, IL (Jenner & Block, Chicago, IL, of counsel), for defendants-appellees.

Before: CARDAMONE, JACOBS, and GOODWIN *, Circuit Judges.

JACOBS, Circuit Judge:

The only issues raised on this appeal concern the scope of a settlement agreement. The troublesome provision is one that states unexceptionally that "the parties will exchange general releases." All of the other provisions of the settlement have been performed. Plaintiff-appellant Manning & Napier Advisors, Inc. ("M & N"), an investment advisory firm, is willing to sign the proposed Mutual General Release on its own behalf and on behalf of the usual list of officers, directors, stockholders, agents, heirs, assigns, and so on; but M & N declines to do so on behalf of its investment clients, nonparties whose interests M & N has been promoting in this lawsuit, assertedly as a fiduciary. M & N also complains that the Mutual General Release does or may affect the interests of another non-party, Ovonic Synthetic Materials Company, Inc. ("OSMC").

Throughout the litigation and the settlement negotiations, M & N and its president, plaintiff-appellant William Manning, have pleaded the authority to act on behalf of "the clients of Manning & Napier as to whom Manning & Napier has or had dispositive power or discretionary authority to invest funds in the capital stock of" defendant-appellee Energy Conversion Devices, Inc. ("ECD") or OSMC. However, after imple-

---

* The Honorable Alfred T. Goodwin, United States Circuit Judge for the Ninth Circuit, sitting by designation.

mentation of the settlement, which entailed, in part, the issuance of OSMC stock to M & N's clients, M & N and Manning disclaimed the authority to release any causes of action that their clients might have against ECD and Stanford Ovshinsky, who is ECD's president and chief executive officer.

The United States District Court for the Western District of New York (Telesca, *J.*) found that M & N's clients, though not named as parties to the action, were nevertheless "parties" within the intended meaning of the settlement provision requiring "the parties" to exchange general releases. Therefore, in an order dated August 18, 1993, the district court ordered M & N to execute a release on behalf of its clients. On appeal, M & N and Manning claim that the district court's order improperly expands the scope of the settlement agreement because M & N's clients were not formal parties to the action below. We hold that the district court's factual finding as to what M & N, Manning, ECD and Ovshinsky meant by the term "parties" was not clearly erroneous, and accordingly affirm the district court's order.

### BACKGROUND

Beginning in the late 1970s, M & N made a series of investments in ECD on behalf of M & N's clients and (as M & N sometimes alleges) on its own behalf. In 1985, ECD established a wholly owned subsidiary, OSMC. In a private placement, M & N purchased all of OSMC's non-voting convertible preferred stock ("OSMC preferred") on behalf of itself and its investment clients; ECD retained the OSMC common stock. At all relevant times, M & N held dispositive power and discretionary authority over its clients' shares of OSMC preferred stock.

In 1986, ECD again approached M & N with an investment opportunity. By this time, however, M & N had grown disenchanted with Ovshinsky's leadership as chief executive officer of ECD and OSMC, and refused to make any future investments in ECD or its subsidiaries unless Ovshinsky and his wife relinquished their voting rights in ECD common stock. Ovshinsky complied by way of a letter agreement.

In 1987, a dispute arose concerning that letter agreement, and M & N commenced a breach of contract action against ECD and Ovshinsky in New York State Supreme Court. M & N invoked federal diversity jurisdiction and removed the action to the United States District Court for the Western District of New York (Telesca, *J.*). Soon after, the two sides entered into a consent decree, filed on February 11, 1988, which required ECD to deposit royalties from certain ECD technologies into a trust fund that within four years would be sufficient (it was hoped) to repurchase the shares of ECD common stock and OSMC preferred stock held by M & N and its clients. The district court retained jurisdiction for all purposes relating to the consent decree and the transactions contemplated therein.

When it became clear that the royalty trust would be grossly under-funded, litigation resumed in the district court. Renewed negotiations, supervised by Judge Telesca, resulted in a settlement agreement that was read into the district court record on September 14, 1992 (the "Agreement"). The Agreement provides in pertinent part that: (i) ECD would be relieved of its obligation to repurchase the OSMC preferred stock and ECD common stock held by M & N and its clients; (ii) instead, ECD would transfer all of OSMC's common stock to M & N's clients, thus consolidating ownership of OSMC in their hands; (iii) the terms of the Agreement would be subject to the district court's approval as fair; and (iv) an expert, Arthur D. Little, Inc. ("Little"), would issue an evaluation of the business and technology of OSMC to assist the court in its fairness ruling. The final paragraph of the Agreement states: "On the closing date ... the parties will exchange general releases...." A week later, on September 23, 1992, the district court issued an order restating the oral undertakings in the transcript, including the provision for "general releases".

The report issued by Little on November 24, 1992 identified control of OSMC as the chief financial benefit flowing to M & N's clients under the Agreement, and valued OSMC's enterprise at $3 million to $4 million; Little expressed no opinion, however, as

to the fairness of the Agreement. On January 19, 1993, Little submitted a corrected and revised report to the district court, which (i) lowered the estimate of OSMC's value to $2 million to $3 million, (ii) concluded that the Agreement unfairly favored ECD, and (iii) suggested that ECD and Ovshinsky had breached contractual and fiduciary obligations to OSMC.

On M & N's motion, the district court conducted an evidentiary hearing concerning the fairness of that portion of the Agreement pertaining to the disposition of OSMC stock. In an opinion and order dated May 26, 1993, the district court approved the Agreement as fair and instructed the parties to prepare definitive documents for its implementation.

ECD prepared a draft Mutual General Release (the "Release") that released claims between and among the "Manning Parties", the "ECD Parties", and "OSMC". M & N promptly objected to the Release because it (i) defined the "Manning Parties" to include M & N's clients as well as the usual list of officers, directors, stockholders, agents, heirs, assigns, and so on, and (ii) included OSMC. M & N refused to execute any release that arguably encompasses claims that its clients or OSMC might have against ECD and Ovshinsky. On August 18, 1993, the district court held a hearing to address the proper scope of the Release. M & N argued that the Release should make no reference to its clients or OSMC. The district court rejected M & N's objections as "baseless" because M & N's "authority to speak and act on behalf of its clients", repeatedly asserted during the proceedings, "necessarily encompasses the power to act on their behalf in connection with settlement." The district court then found that "[e]ffective general releases were a *sine qua non* of the September Settlement and, absent a release on behalf of Manning's clients, these releases are not effective." Accordingly, the district court ordered "the parties" to execute the Release.

Pursuant to this order, Ovshinsky executed the Release in his personal capacity *and* on behalf of ECD. Moreover, although the district court's directive that "the parties" execute the Release did not, by its terms, re-

quire non-party OSMC to do anything, Ovshinsky (presumably in his capacity as an officer of OSMC) immediately executed the Release on OSMC's behalf. M & N, however, persisted in its refusal to execute the Release.

On the same day that the parties were instructed to sign the Release, the district court also ordered the implementation of the other terms of the Agreement: ECD's representatives on OSMC's board were ordered to resign their posts and ECD was ordered to distribute its 1.4 million shares of OSMC common stock to those M & N clients holding OSMC's preferred stock. Despite M & N's refusal to sign the Release, ECD complied with all aspects of the district court's order.

On August 19, 1993, M & N filed two emergency motions, one for reconsideration and the other for a stay pending appeal. The motions were limited solely to the issue of M & N's obligations concerning the Release. The district court denied both motions.

On appeal, M & N asks that we (i) reverse the district court order requiring it to execute the Release on behalf of its clients and (ii) order the deletion of any reference to OSMC in the Release. For the reasons stated below, we decline to do so.

### DISCUSSION

M & N argues on appeal that it cannot be required to sign the Release in its present form because the Agreement provides only for releases to and from "the parties" and neither M & N's clients nor OSMC were ever formal parties to the litigation leading up to the Agreement. Accordingly, M & N seeks the deletion of any reference to its clients or OSMC contained in the Release in order to avoid the foreclosure of rights belonging to parties not properly before the district court.

■ The dispute as to the scope of the Agreement's "general releases" provision can be traced to an ill-considered joinder of parties which prevented the district court from asserting personal jurisdiction over M & N's clients and OSMC. The formal parties—M & N, Manning, ECD, and Ovshinsky—failed

to join all other parties having an interest in the litigation, *see* Fed.R.Civ.P. 19(a), perhaps to prevent the loss of diversity jurisdiction. Probably for the same reason, M & N chose not to organize a class action on behalf of its clients. Although M & N's clients and OSMC may have been necessary parties under Federal Rule of Civil Procedure 19(a), no objection on that ground was raised, and any such objection was therefore waived. *See State Farm Mut. Auto. Ins. Co. v. Mid-Continent Casualty Co.,* 518 F.2d 292, 294 (10th Cir.1975). However, even in the absence of an objection under Rule 19(a), we are obliged to consider whether M & N and OSMC are indispensable parties under Federal Rule of Civil Procedure 19(b). *See Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.,* 567 F.2d 154, 158 n. 4 (1st Cir.1977) ("the absence of an indispensable party may be raised at any time, even by a reviewing court on its own motion"); *Kimball v. Florida Bar,* 537 F.2d 1305, 1307 (5th Cir.1976) (same). On this record, we cannot say that OSMC and M & N's clients were indispensable, such that the action could not proceed in their absence. *See, e.g., Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) (joinder not compulsory where settlement agreement does not bind interested non-party); *Jaser v. New York Property Ins. Underwriting Ass'n,* 815 F.2d 240, 243 (2d Cir.1987). "The speculative possibility of future litigation" involving M & N's clients or OSMC does not furnish a basis for compulsory joinder. *Health–Chem Corp.,* 915 F.2d at 810.

■ Despite the failure to join M & N's clients and OSMC, the parties to the litigation were able to arrive at an enforceable settlement. The critical question is whether the word "parties" referred to in the "general releases" provision of the Agreement, which unquestionably includes M & N, Manning, ECD, and Ovshinsky, was also intended by them to include those persons and entities on whose behalf they may have acted. Judge Telesca, who supervised the successful negotiations, found that "[e]ffective general releases were a *sine qua non* of the ... Settlement and, absent a release on behalf of Manning's clients, these releases are not effective." The district court's order that M & N sign the Release on its clients' behalf is therefore premised on the finding that the named parties intended the word "parties", as used in the Agreement, to include M & N's clients. Our review is limited solely to whether the district court's finding is clearly erroneous. *See Healy v. Rich Prods. Corp.,* 981 F.2d 68, 73 (2d Cir.1992) (district court's finding with respect to the contracting parties' intent will not be disturbed unless clearly erroneous). We hold that it is not.

At each juncture of the litigation, M & N stepped forward as the fiduciary and representative of its clients' interests:

—The 1988 consent decree specifically recites that M & N has dispositive power and discretionary authority over the shares of OSMC preferred stock held by its clients.

—The 1985 OSMC purchase agreement allowed M & N's clients to exchange their OSMC preferred stock for ECD common stock on a one-for-one basis until November 15, 1991. When M & N sought and obtained an extension of this option on November 12, 1991, it argued that such relief was necessary to avoid a grave injustice *to M & N's clients,* the OSMC preferred shareholders.

—On May 1, 1992, after the option expired, M & N again sought relief on behalf of its clients, this time asking the district court to reinstate the option. M & N's reply brief, filed in the district court on that motion, stated that if ECD offered rescission of the entire OSMC purchase transaction, M & N "would gladly accept it on behalf of all of its present OSMC clients".

—After the second Little report was issued, counsel for M & N asked the court to reject the Agreement on the ground that it was unfair to M & N's clients.

—Most tellingly, the benefit that the Agreement confers on the "Manning Parties" runs primarily to M & N's clients; ECD's surrender of its OSMC common stock transferred ownership of OSMC to M & N's clients, not to M & N.

Without challenge, M & N successfully pleaded the power and authority to bind its clients to any settlement negotiated with ECD and Ovshinsky. As such, it was not

clearly erroneous for the district court to find that the provision in the settlement agreement requiring releases to and from "the parties" was necessarily intended to include M & N's clients. Therefore, in accordance with the Agreement, M & N must sign the Release on behalf of its clients.

M & N also attacks the district court order on the ground that it arguably requires M & N to execute the Release on behalf of OSMC as well. After a close review of the order and the record, we conclude that the district court's order requires M & N to execute a release on behalf of M & N's clients, not on behalf of OSMC. While the district court ruled that M & N's clients fall within the intended meaning of "parties" as that term is used in the Agreement, there is no such ruling in the record with respect to OSMC. The limited scope of the district court's ruling is consistent with the fact that, whereas M & N did represent the interests of the OSMC preferred shareholders (M & N's clients) during negotiations with ECD and Ovshinsky, there is no indication in the record that M & N ever represented the interests of OSMC itself. Presumably for this reason, the district court's order does not require M & N to execute the Release on OSMC's behalf.

Seizing upon the fact that OSMC is not a "party" for purposes of the Agreement, M & N asks that we order the deletion of any reference to OSMC in the Release. This we are not prepared to do. The Release drafted by counsel for ECD and Ovshinsky names OSMC as releasor and releasee, but the district court never ordered that the Release be signed by anyone on OSMC's behalf. Although Ovshinsky has executed the Release on behalf of OSMC (apparently in his capacity as its chief executive officer), his power to do so was neither increased nor diminished by any provision of the Agreement or by the district court's order. M & N is not being ordered to countersign, ratify, or acknowledge the validity of the OSMC release executed by Ovshinsky. We have no occasion to address M & N's concern that Ovshinsky has effectively released any claims that OSMC might have against Ovshinsky and ECD. OSMC is not before this Court, except as an *amicus curiae*, and the validity of the OSMC release executed by an officer of the company, releasing himself and others, is a question that is not raised on appeal.

## CONCLUSION

The Agreement calls for the "parties" to execute releases. The district court found that, in this case, the named parties intended that the word "parties", as used in the settlement agreement, includes M & N's clients. This finding is not clearly erroneous, and therefore the order of the district court is affirmed. Since the district court's ruling does not require or forbid Ovshinsky or anyone else to execute the Release on OSMC's behalf, and does not establish or impair the validity of any release given by OSMC, there is no ground for modifying the district court's order in any respect.