C. Robert ALLEN, III, by Luke ALLEN, as Guardian for the Property Management of C. Robert Allen III, Plaintiff,

v.

Christopher DEVINE, Lakeshore Media, LLC, Milcreek Broadcasting LLC, College Creek Media LLC, Marathon Media Group, LLC, 3 Point Media—Salt Lake City, LLC, 3 Point Media Delta, LLC, 3 Point Media—Utah, LLC, 3 Point Media—Franklin, LLC, 3 Point Media—Prescott Valley, LLC, 3 Point Media—Coalville, LLC, 3 Point Media—Arizona, LLC, 3 Point Media—Florida, LLC, 3 Point Media—Kansas, LLC, 3 Point Media—Ogden, LLC, 3 Point Media—San Francisco, LLC, Midvalley Radio

Partners, LLC, D & B Towers LLC, Superior Broadcasting of Denver, LLC, Wackenburg Associates, LLC, Portland Broadcasting LLC, Desert Sky Media LLC, Sky Media LLC and John Does 1–50, Defendants.

No. 09–cv–668 (ADS)(MLO).

United States District Court, E.D. New York.

Nov. 19, 2009.

Cohen & Gresser LLP, by Lawrence T. Gresser, Esq., Alexandra Sarah Wald, Esq., Nathaniel P.T. Read, Esq., Alexis Gena Stone, Esq., and Harvey B. Silikovitz, Esq., Of Counsels, New York, NY, for Plaintiffs.

Peckar & Abramson, P.C., by Kevin Joseph O'Connor, Esq., Of Counsel, New York, NY, for Defendants.

Allyn & Fortuna, LLP, by Nicholas J. Fortuna, Esq., Of Counsel, New York, NY, Callister Nebeker & McCullough, P.C., by Mark L. Callister, Esq., Of Counsel, Salt Lake City, UT, for Defendant D & B Towers LLC.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arise out of allegations by the plaintiff, C. Robert Allen, III ("Allen"), by his Guardian for Property Management, Luke Allen, that the defendants defrauded Allen out of tens of millions of dollars over several years. Presently before the Court are (1) a motion by defendants Christopher Devine, Lakeshore Media, LLC, College Creek Media LLC, Marathon Media Group, LLC, 3 Point Media—Salt Lake City, LLC, 3 Point Media Delta, LLC, 3 Point Media—Prescott Valley, LLC, 3 Point Media—Coalville, LLC, 3 Point Media—Arizona, LLC, 3 Point Media—Florida, LLC, 3 Point Media—Kansas, LLC, 3 Point Media—Ogden, LLC, 3 Point Media—San Francisco, LLC, Midvalley Radio Partners, LLC, Superior Broadcasting of Nevada, LLC, Superior Broadcasting of Denver, LLC, Wackenburg Associates, LLC, Portland Broadcasting LLC, Desert Sky Media LLC, and Sky Media LLC (collectively, the "Moving Defendants") to dismiss the complaint for failure to join an

indispensable party, pursuant to Fed. R.Civ.P. 19, (2) a motion by the Moving Defendants in the alternative to transfer the action, (3) a motion by defendant D & B Towers, LLC ("D & B Towers") to dismiss the complaint against them for lack of personal jurisdiction, and (4) a motion by defendant D & B Towers to dismiss the complaint against them for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6) and 9(a). For the reasons which follow, the Court denies all the motions, and orders Bruce Buzil, Richard Davis, and Superior Broadcasting Company, Inc. to be joined as defendants as to the plaintiff's request for a constructive trust, and orders Bruce Buzil and Richard Davis to be joined as defendants as to the plaintiff's request for injunctive relief.

## I. BACKGROUND

C. Robert Allen III is a 79–year old resident of Port Washington, New York. He is alleged to have lived in Port Washington since at least the 1980's. Through his family, Allen developed significant personal wealth, though Allen himself had earned little money in business. According to the complaint, Allen is today both physically and mentally infirm, and rarely leaves his home.

Allen alleges that he met defendants Christopher Devine and Bruce Buzil in the 1980's. Soon after Allen met Devine, it is alleged that Devine began telephoning Allen in his New York home on a daily basis. Devine also allegedly visited Allen at his home in Port Washington, New York on multiple occasions. According to Allen, Devine and Buzil saw him as a "mark", and ingratiated themselves to Allen for the purpose of defrauding him.

In 1999, Devine and Buzil allegedly began soliciting Allen to invest in a company called Superior Broadcasting Company, Inc. ("Superior"), for which Devine served as president and Buzil served as secretary. Devine and Buzil allegedly represented to Allen that Superior owned several radio stations and other related assets, when in fact Superior was a shell company with no significant assets or income. Allen alleges that, beginning in 2000, he began making significant loans to Superior based on Devine and Buzil's misrepresentations.

Once Allen began making loans to Superior, Devine and Buzil allegedly began using these loans for their own benefit. Allen alleges that Devine and Buzil improperly diverted some of the money he loaned to Superior directly to themselves, and used some of the money to pay an accomplice, one Richard Davis. However, A large portion of the money is alleged to have been used to fund a network of limited liability corporations that Devine and Buzil owned (the "Devine/Buzil LLCs"), without any benefit for Superior or Allen. One of these alleged Devine/Buzil LLCs is the defendant D & B Towers. Allen names as defendants an additional twenty-two Devine/Buzil LLCs, all of which Allen alleges were operated by Devine and Buzil from a single Chicago office.

Further, Allen alleges that Devine and Buzil were aided in their scheme by Allen's neighbor in Port Washington, Richard Davis. While Allen introduced Davis to Devine and Buzil, Allen alleges that Devine and Buzil ultimately included Davis as a co-conspirator in their scheme. Davis' role in the scheme is alleged as follows: First, Davis would loan money to Superior, Devine, Buzil, and the Devine/Buzil LLCs. Devine and Buzil would then use the money Allen invested in Superior to repay these loans to Davis, plus exorbitant interest. Allen alleges that approximately $23 million of Allen's money was eventually paid to Davis.

To keep Allen from discovering their alleged misappropriation of funds, Devine

and Buzil allegedly prepared falsified financial statements for Superior. They then regularly sent these statements to Allen at his home in New York. Allen alleges that, by 2007, when family members discovered the fraud, he had lost some $70 million to Devine and Buzil's scheme.

On February 18, 2009, Allen filed the present law suit, naming as defendants Devine, Buzil, and twenty-three Devine/Buzil LLCs. Against Devine and Buzil, Allen alleges violations of the Racketeering Influenced Corrupt Organizations Act ("RICO"), fraud, and breach of fiduciary duty. Against all the defendants Allen alleges civil conspiracy, conversion, and unjust enrichment. On March 20, 2009, Allen voluntarily dismissed Buzil from the present case pursuant to Fed.R.Civ.P. 41(a)(1)(A)(1), after a New York State Justice found, in sealed proceedings in a separate but related matter, that New York State long arm jurisdiction did not extend to Buzil. Allen states that he dismissed Buzil "rather than waste time on motion practice over jurisdictional issues incidental to Allen's principal rights to relief." (Opp. at 8.)

## II. DISCUSSION

### A. As to the Moving Defendants' Motion to Dismiss for Failure to Join an Indispensable Party

The Moving Defendants have moved to dismiss the present action without prejudice pursuant to Fed.R.Civ.P. 19(b) for failure to join an indispensable party. Specifically, the Moving Defendants argue that Buzil and Davis are necessary parties, but that Buzil's joinder is not feasible because the Court has no personal jurisdiction over him, and that Davis's joinder is not feasible because his joinder would destroy the Court's subject matter jurisdiction. The Moving Defendants argue this

is fatal to the plaintiff's complaint. The Moving Defendants additionally argue that Superior is a necessary party, though the parties agree that Superior's joinder is feasible.

Under Rule 19, the Court conducts a three-part analysis concerning the joinder of a party. The Court considers (1) whether the party is necessary to the present case and therefore should be joined, (2) whether the party's joinder is feasible (that is, whether all jurisdictional requirements are met and whether any other extraordinary circumstance prevents joinder), and (3) whether, if the party is necessary but joinder is not feasible, the court may in equity and good conscience, allow the action to proceed with the existing parties. *See, Viacom Intern., Inc. v. Kearney,* 212 F.3d 721, 724–25 (2d Cir.2000); *Underpinning & Foundation Skanska, Inc. v. Berkley Regional Ins. Co.,* 07–cv–2758 (ADS)(ARL), 262 F.R.D. 196, 200–01 (E.D.N.Y.2009); Fed.R.Civ.P. 19.

Fed.R.Civ.P. 19 provides that a party is necessary to an action when:

(A) in that person's absence, the court cannot accord complete relief among existing parties . . .

Fed.R.Civ.P. 19(a); *see also, Viacom Intern., Inc.,* 212 F.3d at 724.

 The Court therefore first considers whether Buzil, Davis, or Superior are necessary parties who must be joined in this action pursuant to Rule 19(a). In general, the party moving for compulsory joinder has the burden of showing that joinder is appropriate. *Joseph S. v. Hogan,* 561 F.Supp.2d 280, 311 (E.D.N.Y.2008) (citing *Bodner v. Banque Paribas,* 114 F.Supp.2d 117, 137 (E.D.N.Y.2000) and *M.C. v. Voluntown Bd. of Educ.,* 178 F.R.D. 367, 369 (D.Conn.1998)). Generally, joint tortfeasors are not necessary parties under Rule 19(a). *See Temple v. Synthes Corp., Ltd.,*

498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."); *Bodner v. Banque Paribas,* 114 F.Supp.2d 117, 136–37 (E.D.N.Y.2000); Fed R. Civ. P. 19 advisory committee's note ("[Rule 19] is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability.").

■ Here, the plaintiff is alleging that all of the named defendants, plus Buzil, Davis, and Superior, conspired to commit and did commit torts against the plaintiff. Buzil, Davis, and Superior are therefore alleged joint tortfeasors along with the named defendants. At least with respect to money damages, the Court finds that the Moving Defendants have made no showing sufficient to contravene the general rule that a plaintiff need not join all alleged joint tortfeasors. The two cases that the Moving Defendants cite in support of their argument, *Fitzgerald v. Jandreau,* 16 F.R.D. 578 (S.D.N.Y.1954) and *Serlin v. Samuels,* 101 F.R.D. 64 (E.D.N.Y.1984), are both inapposite. *Fitzgerald* addressed the joinder of a non-party local union chapter when the plaintiff sought to enjoin it from disaffiliating from a national union, and *Serlin* held that potential claimants to a decedent's estate are necessary parties. *Id.* Neither appears analogous to the present case.

The Moving Defendants similarly argue that, because the torts alleged involve complicated transactions, all implicated persons must be made parties to this action. Again, this argument is unavailing. All persons relevant to the case may be called as witnesses, and, similarly, may seek to interplead into the case if they are concerned their interests will be harmed. Moreover, the Moving Defendants have provided no law, and the Court is aware of none, that supports the conclusion that the complexity of the alleged tort requires the joinder of alleged joint tortfeasors. The Court therefore denies the Moving Defendants' motion to dismiss for failure to join a necessary party with respect to the plaintiff's requests which may involve joint and several money damages.

■ However, the analysis diverges with respect to the equitable relief the plaintiff seeks. The plaintiff requests:

> a constructive trust over the amounts invested in the Devine/Buzil LLCs and the John Does Defendants ... [and] an injunction preventing the dissipation of any funds obtained from Allen and the sale or other transfer of any assets obtained in whole or in part with any funds obtained from Allen ...

(Compl. at 40.)

The Court first finds that "complete relief" as requested with respect to the plaintiff's constructive trust request could not be accorded among the existing parties without the presence of Buzil, Davis, and Superior. The plaintiff alleges that (1) Buzil invested money in the Devine/Buzil LLCs, (2) Davis loaned money to the Devine/Buzil LLCs, and (3) Superior transferred money to the Devine/Buzil LLCs. Any constructive trust over "the amounts invested in the Devine/Buzil LLCs" would therefore necessarily implicate the rights of Buzil, Davis, and Superior with regard to their alleged investments in the Devine/Buzil LLCs. Without their presence in this case, their claims to the requested constructive trust would be unprotected. They are therefore necessary parties with respect to this request.

Buzil and Davis are also necessary parties with respect to the plaintiff's request for injunctive relief. The plaintiff plainly alleges that a large portion of the funds

"obtained from Allen" were improperly diverted to Buzil and Davis, and presumably remain in their possession. Any injunction preventing "the dissipation of funds obtained from Allen" would necessarily provide the plaintiff with complete relief only if it also applied to funds in the possession of Buzil and Davis.

Finding these parties to be necessary, the Court must then consider whether the joinder of Buzil, Davis, and Superior is feasible. Although no party requests that Buzil, Davis, or Superior be in fact joined to the present action, each should be joined if it is feasible. *See MasterCard Intern. Inc. v. Visa Intern. Service Ass'n, Inc.*, 471 F.3d 377, 382–383 (2d Cir.2006) (holding that trial courts may consider joinder of necessary parties *sua sponte,* and citing *Manning v. Energy Conversion Devices, Inc.*, 13 F.3d 606, 609 (2d Cir. 1994)).

The parties do not dispute that the joinder of Superior is feasible, and for reasons substantially analogous to those discussed below at II(C), the Court agrees. However, the parties do not agree as to the feasibility of the joinder of Davis and the joinder of Buzil. In turn, therefore, the Court reviews these matters.

Davis is a New York resident, and is therefore subject to the personal jurisdiction of this Court. However, the plaintiff, also a New York resident, has alleged subject matter jurisdiction, in part, on diversity grounds. Davis's joinder would therefore destroy complete diversity between the parties, vitiating the Court's diversity jurisdiction over this case.

Nevertheless, the plaintiff also alleges that the Court has federal question subject matter jurisdiction over this case based on his RICO claims, pursuant to 28 U.S.C. § 1331. While all of the plaintiff's other claims are state law claims, 28 U.S.C. § 1367 provides the Court with the power to exercise its supplemental jurisdiction over state law claims that "form part of the same case or controversy" as the federal claim. However, Section 1367 provides that the Court's exercise of supplemental jurisdiction is discretionary when state law claims "substantially predominate[ ] over the claim or claims over which the district court has original jurisdiction." Here, the state law claims are more numerous than the plaintiff's federal claim. Nevertheless, it is not obvious that they predominate over the plaintiff's federal claim, as the federal claim relies on virtually all of the same factual predicates as the state law claims. Moreover, taking into account "the traditional 'values of judicial economy, convenience, fairness, and comity,'" *Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)), the Court finds that its exercise of supplemental jurisdiction would be proper even if the state law claims were determined to predominate. Davis's joinder is therefore feasible.

As for Buzil, he is not a New York resident, and his joinder will therefore only be feasible if the Court can exercise personal jurisdiction over him. The Court's personal jurisdiction power is pursuant to New York's long-arm statute, which provides in pertinent part:

> Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: ... 2. commits a tortious act within the state,

NY C.P.L.R. § 302(a).

Here, the plaintiff alleges that Buzil made tortious misrepresentations to Allen

in New York by telephone and in writing. However, the plaintiff does not allege that Buzil took any actions giving rise to a tort while physically inside New York. The Second Circuit has held that the law in New York State with regard to personal jurisdiction under Section 302(a)(2) is clear: personal jurisdiction arises under this section *only* pursuant to actions taken while physically within New York State. *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27–29 (2d Cir.1997) (holding that, while some lower New York State courts have disagreed, the New York State Court of Appeals has not overturned its clear indication that physical presence in the state is a prerequisite for personal jurisdiction under Section 302(a)(2)).

However, the plaintiff does allege that Devine took tortious actions while physically in New York State, and personal jurisdiction under Section 302(a)(2) may also be predicated on acts taken by a co-conspirator within New York when the co-conspirator acts as "agent" for the absent party. To determine whether this personal jurisdiction exists, the Court considers whether: "(1) the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators." *Cleft of the Rock Foundation v. Wilson*, 992 F.Supp. 574, 583 (E.D.N.Y.1998) (Spatt, J., quoting *Heinfling v. Colapinto*, 946 F.Supp. 260, 265 (S.D.N.Y.1996)). Here, the plaintiff alleges that Buzil was a full-fledged participant in virtually every one of Devine's alleged misdeeds. He is alleged to have been aware of Devine's acts; to have benefited from them; and to have supported them. Under the co-conspirator theory, Devine's allegedly tortious acts in New York are therefore imputed to

Buzil, and the Court may exercise personal jurisdiction over Buzil under Section 302(a)(2).

However, before exercising personal jurisdiction over Buzil, the Court must also examine whether his joinder is consistent with the requirements of federal due process. For reasons analogous to those more fully set forth below at II(C)(2), the Court finds that the exercise of personal jurisdiction over Buzil is consistent with due process. Buzil's joinder is therefore also feasible.

Because Superior, Davis, and Buzil are necessary parties under Rule 19 and their joinder is feasible, the Court orders them joined as defendants in the present action with respect to the requests for relief for which they are necessary. Thus, (1) Superior, Davis, and Buzil are ordered joined as defendants with respect to the plaintiff's request for the establishment of a constructive trust, and (2) Davis and Buzil are ordered joined as defendants with respect to the plaintiff's request for injunctive relief.

## B. As to the Moving Defendants' Motion to Transfer

In the alternative, the Moving Defendants move to transfer this case to the Northern District of Illinois. The Moving Defendants argue that there are two bases for this: (1) venue is improperly laid in the Eastern District of New York pursuant to the applicable statutory venue provisions, and (2) even if venue is proper in the Eastern District of New York, transfer is warranted for equitable reasons. Although the Moving Defendants do not clearly separate these issues, the Court considers them in turn.

The Moving Defendants contend that venue is not proper pursuant to the RICO venue statute, which states:

Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965(a). The plaintiff responds that, even if venue does not properly lie pursuant to Section 1965(a), it is proper under 28 U.S.C. § 1391, which states in pertinent part:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

The plaintiff argues that Section 1965(a) is intended to supplement, not to replace, Section 1391.

The Court agrees that Section 1965(a) is intended to supplement, and not replace, Section 1391. *See Pardy v. Gray*, No. 06–CV–6801 (JBW), 2007 WL 1825200, *3 (E.D.N.Y.2007) (holding Section 1965(a) need not be satisfied when Section 1391 is satisfied); *City of New York v. Cyco.Net, Inc.*, 383 F.Supp.2d 526, 543–44 (S.D.N.Y. 2005) (same). Thus, the plaintiff need not satisfy Section 1965(a) here. Further, the Moving Defendants do not contest the plaintiff's assertion that venue is proper pursuant to Section 1391. While the Moving Defendants make passing reference to venue not being "proper" in their reply memorandum of law (*See* Defs.' Reply at 8–9), the Court finds that the Moving De-

fendants did not raise this argument in their motion for transfer. The Court therefore declines to transfer the case because of improper venue.

The Moving Defendants additionally argue that, even if venue is proper, transfer to the United States District Court for the Northern District of Illinois is appropriate on equitable grounds pursuant to 28 U.S.C. § 1404(a), which provides:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

■ The movant in a motion to transfer pursuant to Section 1404(a) bears the burden of establishing the propriety of transfer by clear and convincing evidence. *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.1950); *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 327 (E.D.N.Y.2006) (Spatt, J.); *Excelsior Designs, Inc. v. Sheres*, 291 F.Supp.2d 181, 185 (E.D.N.Y.2003); *Hernandez v. Blackbird Holdings, Inc.*, No. 01 Civ. 4561, 2002 WL 265130, at *1 (S.D.N.Y. Feb. 25, 2002). The criteria that courts utilize to determine whether to transfer an action under Section 1404 include: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; and (9) trial efficiency and how best to serve the interests of justice, based on an assessment of the totality of material circumstances. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006); *Laumann Mfg. Corp. v. Castings*

*USA, Inc.*, 913 F.Supp. 712, 720 (E.D.N.Y. 1996). Ultimately, "[t]he Court has broad discretion in balancing these factors." *Neil Bros. Ltd.*, 425 F.Supp.2d at 328 (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992)).

■ The Moving Defendants argue that four primary factors militate in favor of transfer: (1) the businesses in question are all alleged to have been operated by Devine and Buzil in Chicago, not New York, (2) four of the Moving Defendants are involved in Chapter 11 bankruptcy proceedings in the Northern District of Illinois, (3) the pertinent business records required for discovery are voluminous and located in the Northern District of Illinois, (4) there are numerous party and non-party witnesses located in Illinois, and (5) Illinois law applies in this case. The Court finds that these factors do not merit transfer.

As an initial matter, the Court must accord significant deference to a plaintiff's choice of forum. *See Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71 (2d Cir.2001). The Moving Defendants argue that the present case is an exception to this general rule because there is no connection between the underlying facts and the venue. *See, e.g., Kai Wu Lu v. Tong Zheng Lu*, No. 04–cv–1097 (CBA), 2007 WL 2693845, *6 (E.D.N.Y. Sept. 12, 2007) (according lesser deference to the plaintiff's choice of forum when there was not a strong connection to the locus of operative facts). This argument is inapplicable. The plaintiff alleges that at all times relevant to his claims, he was present in the Eastern District of New York, and that he felt the effects of the alleged fraud solely in New York. The plaintiff alleges he received visits, innumerable telephone calls, and written communications in New York that effected the alleged fraud. He also alleges that he initiated the wire transfers allegedly involved in the fraud from New York. These are obvious connections with the present forum, and the Court therefore gives deference to the plaintiff's choice of forum.

As for their affirmative arguments in favor of transfer, the Moving Defendants first assert that the location of Devine and the defendant corporations in Chicago militates for transfer, as it will be burdensome for "23 separate defendants" to come to New York to litigate the present action. (Defs. Mem. L. at 18.) All of the Moving Defendants save Devine, however, are corporate persons, many or most of which are allegedly controlled by Devine and Buzil. Indeed, the same law firm represents all of the Moving Defendants, including Devine. Only defendant D & B Towers has retained separate additional counsel. Moreover, the Moving Defendants offer no authority that the numerosity of out of state defendants favors transfer. The Court therefore finds that this argument does not weigh heavily in favor of transfer.

Similarly, the Moving Defendants offer no authority in support of their second argument that transfer is warranted in light of the pending bankruptcy proceedings of four of the Moving Defendants in the Northern District of Illinois. While judicial economy favors the transfer of closely related cases to a single district, *see Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990), the Moving Defendants have made no showing that the four defendants' bankruptcies are closely related to the present case. Moreover, those bankruptcies are presumably pending before bankruptcy judges, not the district judge to whom this case would be transferred in the Northern District of Illinois. This factor also does not strongly support transfer.

The Moving Defendants also argue that the presence of discovery material in Illinois supports transfer. However, as the

plaintiff points out, courts in this circuit have generally held that contemporary technology has significantly reduced the importance of this factor. *See Charter Oak Fire Ins. Co. v. Broan–Nutone, L.L.C.,* 294 F.Supp.2d 218, 221–22 (D.Conn.2003) (citing *Ford Motor Co. v. Ryan,* 182 F.2d 329, 331 (2d Cir.1950)). In addition, it is unclear what discovery benefit the Moving Defendants would obtain by litigating the present case in Illinois. Presumably, all of the relevant documents will be scanned and copied for production regardless of venue. Even if the documents were ultimately produced on-site, the Moving Defendants would be obliged to open their office or offices for inspection of documents. The Court does not see how the venue of the action would affect the burden caused by this in any way. This factor therefore also does not weigh heavily in favor of transfer.

Also, the Moving Defendants additionally argue that the presence of party and non-party witnesses in Illinois favors transfer. As a general matter, inconvenience to witnesses, and non-party witnesses in particular, is an important factor in deciding a motion to transfer. *See Herbert Ltd. Partnership v. Electronic Arts Inc.,* 325 F.Supp.2d 282, 286 (S.D.N.Y. 2004). To show inconvenience of witnesses, the movant must provide a detailed list of the witnesses who will be inconvenienced, and the testimony that each witness will provide. *See, e.g., Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F.Supp.2d 325, 329 (E.D.N.Y.2006).

Here, the Moving Defendants identify just one witness, Devine, who is a party to the case and who will be inconvenienced. However, as a party to the action, Devine's inconvenience does not weigh heavily in favor of transfer. The Moving Defendants also identify Buzil as a non-party witness who will be inconvenienced by trial in New York. Buzil is an Illinois resident, but he is also now being made a party to the action. Moreover, any inconvenience Buzil would suffer due to a trial in New York would be mirrored by the inconvenience suffered by Davis, a New York resident who is also now being made a party, if the case were tried in Illinois. Finally, the Moving Defendants identify Larry Levy, the bookkeeper for Superior, as an inconvenienced non-party witness. Levy is also an Illinois resident, but his employer, Superior, is now also a party to the case. Further, the Moving Defendants' description of Levy's testimony suggests he will largely authenticate records. Thus, Levy's testimony is likely to be short, and his inconvenience minimal. The burden on witnesses therefore also does not weigh heavily in favor of transfer.

The Moving Defendants also argue that the application of Illinois law favors transfer. However, the Moving Defendants have not shown that Illinois law applies to the present case. The Moving Defendants cite to only one case to support their argument that Illinois law applies here, *Kanbar v. U.S. Healthcare, Inc.,* 715 F.Supp. 602 (S.D.N.Y.1989). The Court finds *Kanbar* to be inapplicable, as it analyzes choice of law in a case where the alleged tort had virtually no connection with the forum state. In the present case, the plaintiffs allege that significant acts related to the alleged torts took place in the forum state, New York, and that the torts had their primary effects in New York. To be sure, the Court does not find that New York law necessarily applies in the present case. However, the Moving Defendants have the burden of showing that transfer is proper, and they therefore also have the burden of substantiating their choice of law argument if that is to serve as a basis for transfer. The Moving Defendants have not done this, and the Court therefore accords this factor no weight.

In addition, the Court considers the plaintiff's health as a factor that weighs against transfer. The plaintiff is 78 years old, and has submitted an affidavit from his doctor of twelve years, Roger Emert, M.D., in which Dr. Emert states that the plaintiff's frailty would preclude his travel to Chicago. The Court acknowledges that the Moving Defendants have not had the opportunity to cross-examine Dr. Emert, or to have the plaintiff examined by their own physician concerning the plaintiff's ability to travel. While these limitations lead the Court to accord less weight to Dr. Emert's affidavit, the Court nonetheless finds that this factor weighs in favor of maintaining the current venue.

In light of these factors, and according due deference to the plaintiff's choice of forum, the Court finds that transfer is not warranted, and therefore denies the Moving Defendants' motion to transfer.

## C. As to D & B Towers' Motion to Dismiss for Lack of Personal Jurisdiction

D & B Towers separately moves to dismiss the complaint against it for lack of personal jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(2). As a general matter, the plaintiff has the burden of showing that personal jurisdiction over each defendant is proper. *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 196 (2d Cir.1990). The plaintiff may meet this burden by alleging facts that state a prima facie case for personal jurisdiction. *Id.* at 197. A defendant may challenge personal jurisdiction on the merits at a specially requested jurisdictional hearing, at summary judgment, or at trial. *Id.* However, for purposes of a pre-discovery Rule 12(b)(2) motion to dismiss, such as the present motion, the court takes the plaintiff's jurisdictional allegations as true and in the best light for the plaintiff. *Id.*; *National Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C.,* 319

F.Supp.2d 352, 357 (S.D.N.Y.2004). The Court may also consider factual submissions when determining a pre-discovery Rule 12(b)(2) motion, though these are also taken in the best light for the plaintiff. *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1109 (2d Cir.1997) (stating that, in deciding a pre-discovery Rule 12(b)(2) motion, the court "construe[s] the pleadings and affidavits in plaintiff's favor").

The Court analyzes its personal jurisdiction over a party pursuant to a two-step process. First, the Court considers whether personal jurisdiction lies pursuant to any of the provisions of New York's long-arm statute, C.P.L.R. §§ 301 and 302. *See National Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C.,* 319 F.Supp.2d 352, 357 (S.D.N.Y.2004) (citing *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 105, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)). Second, the Court analyzes whether personal jurisdiction comports with the basic requirements of due process. *Id.*

### 1. Long Arm Jurisdiction

Here, the plaintiff argues that the Court has personal jurisdiction over D & B Towers pursuant to C.P.L.R. § 302(a). The relevant text of Section 302(a) is set forth above at II(B), and provides for personal jurisdiction over a defendant who, in person or through an agent, commits tortious acts in New York State. The plaintiff contends that Devine, acting as agent for D & B Towers, committed tortious acts in New York, thus subjecting D & B Towers to personal jurisdiction in New York. D & B Towers argues that the plaintiff has failed to properly allege these facts.

■ As a general matter, an "agent" for purposes of C.P.L.R. § 302(a) is a person who has "[1] acted in the state [2] 'for the benefit of, and [3] with the knowledge and consent of' the non-resident principal."

*CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 366 (2d Cir.1986); *see also National Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C.,* 319 F.Supp.2d 352, 361 (S.D.N.Y.2004). The Court thus considers these factors.

■ First, the Court finds that the plaintiff has alleged that Devine took actions "in the state" of New York and "for the benefit of" D & B Towers. Devine is alleged to have visited the plaintiff in New York "on multiple occasions" to induce the plaintiff to lend money that Devine then used to benefit the Devine/Buzil LLCs. One of the Devine/Buzil LLCs is D & B Towers. Taking the pleadings in the best light for the plaintiff, these allegations, though general, satisfy the first two factors.

However, whether these actions were taken with the "knowledge and consent" of D & B Towers is a closer question. According to a sworn and uncontested affidavit by Bret J. Leifson, the current manager of D & B Towers, D & B Towers did not exist until March 1, 2004. Thus, Devine could not have acted with the "knowledge and consent" of D & B Towers prior to this time. Leifson's affidavit also states, however, that from March 1, 2004 until March 31, 2005, Devine and Buzil were the sole owners and managers of D & B Towers. In addition, from March 31, 2005 until approximately June 2006, Devine and Buzil maintained day-to-day control over D & B Towers. The Court therefore finds that, at least during the period when Devine and Buzil were the sole owners of D & B Towers, and possibly during the period that they continued to manage D & B Towers, it had knowledge of and consented to Devine's actions.

The operative question for the Court is therefore whether the plaintiff has established a prima facie case that Devine met with the plaintiff in New York during the period when D & B Towers knew of and consented to Devine's actions. The Court views this issue as a close one, as the plaintiff has not alleged with specificity when Devine met with the plaintiff in New York in furtherance of the torts alleged. However, the Court notes that, at this juncture, it is obliged to take the pleadings and the affidavits in the best light for the plaintiff, and therefore finds that the plaintiff's allegation that Devine met with Allen in New York on "multiple occasions" may be viewed as alleging that Devine met with the plaintiff in New York during the time period that he and Buzil owned and controlled D & B Towers. Thus, the Court finds that the plaintiff has established a prima facie case that C.P.L.R. 302(a) confers personal jurisdiction over D & B Towers.

### 2. Due Process

■ The Court must also address whether exercising personal jurisdiction over D & B Towers meets the "minimum contacts" and "reasonableness" requirements of federal due process. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 127 (2d Cir.2002).

Here, the plaintiff has alleged specific personal jurisdiction over D & B Towers. Thus, to determine whether the minimum contacts requirements are met in this context, the Court must analyze whether there D & B Towers has " 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 241 F.3d 135, 152 (2d Cir.2001).

The Court finds that the plaintiff has sufficiently stated a prima facie case that D & B Towers has met this standard. The plaintiff alleges that D & B Towers, through Devine, not only came into New York to meet with the plaintiff, but also consistently telephoned and sent docu-

ments into New York for the purpose of wrongfully obtaining the plaintiff's money. Thus, D & B Towers, through Devine, is alleged to have purposefully interacted in New York in furtherance of its business. Taking the plaintiff's allegations as true, D & B Towers should have anticipated being "haled into" a New York court. D & B Towers has therefore met the minimum contacts requirements for due process.

In addition, the Court must analyze whether the exercise of personal jurisdiction is reasonable. The Court must consider five factors in determining reasonableness:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Bank Brussels Lambert,* 305 F.3d at 129 (internal quotations omitted, citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113–14, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). Balancing these factors, the Court finds that the exercise of personal jurisdiction over D & B Towers is reasonable. While D & B Towers is currently managed in Utah, the plaintiff has a significant interest in obtaining convenient relief in New York, and New York has a significant interest in adjudicating a tort that allegedly arose out of conduct in New York. *See, e.g., Cleft of the Rock Foundation,* 992 F.Supp. at 584. Further, the claims against D & B Towers are also asserted against Devine and the other defendants, and the interstate judicial system has an efficiency interest in adjudicating the claims against D & B Towers at the same time that it adjudicates the same claims against the other defendants.

For these reasons, the Court finds that the plaintiff has established a prima facie case for personal jurisdiction over D & B Towers. The Court therefore denies D & B Towers' motion to dismiss for lack of personal jurisdiction.

**D. As to D & B Towers' Motion to Dismiss for Failure to State a Claim**

D & B Towers also moves to dismiss the plaintiff's claim of civil conspiracy against it for failure to plead the claim with sufficient specificity, as required by Fed. R.Civ.P. 9(b). Fed.R.Civ.P. 9(b) states:

> (b) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

D & B Towers argues that this rule applies to a claim for civil conspiracy to commit fraud, and that the plaintiff has not alleged with sufficient specificity the acts taken by D & B Towers in furtherance of the conspiracy. The plaintiff responds that Fed.R.Civ.P. 9(b) does not apply to a claim for conspiracy to commit fraud. The Court agrees with the plaintiff.

While there is some apparent debate among the district courts in this circuit as to the proper pleading standard for a conspiracy to commit fraud, the Second Circuit has stated:

> On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy. [A] pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a).

*Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 4 (2d Cir.1990); *accord Maersk, Inc. v. Neewra, Inc.,* 554

F.Supp.2d 424, 459–60 (S.D.N.Y.2008). Here, D & B Towers does not allege that the plaintiff has failed to allege the underlying fraud pursuant to Rule 9(a), or that the plaintiff has failed to allege the civil conspiracy pursuant to Rule 8. Rather, the plaintiff alleges only that the plaintiff has failed to meet the heightened pleading requirements of Rule 9(a) in alleging D & B's role in the alleged civil conspiracy. Because Rule 9(a) does not apply to an allegation of conspiracy to commit fraud, the Court denies D & B Towers' motion to dismiss.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Moving Defendants' motion to dismiss for failure to join an indispensable party pursuant to Rule 19 is DENIED,

**ORDERED** that the Moving Defendants' motion to transfer is DENIED,

**ORDERED** that defendant D & B Towers' motion to dismiss for lack of personal jurisdiction is DENIED,

**ORDERED** that defendant D & B Towers' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and Rule 9(a) is DENIED,

**ORDERED** that Bruce Buzil, Richard Davis, and Superior Broadcasting Company, Inc. be joined as defendants as to the plaintiff's request for a constructive trust, and

**ORDERED** that Bruce Buzil and Richard Davis be joined as defendants as to the plaintiff's request for injunctive relief.

**SO ORDERED.**